GEORGE M. PHILLIPS v. UNION TERMINAL RAILWAY COMPANY, Appellant.—40 S. W. (2d) 1046.

Division One, June 24, 1931.

*Brown, Douglas & Brown* for appellant.

*Mytton, Parkinson & Norris* for respondent.

GANTT, P. J.—This case came to me on reassignment. Action under the Federal Employers' Liability Act to recover damages for

personal injuries. The jury returned a verdict for $10,000. Judgment accordingly, and defendant appealed.

Defendant conducts a terminal railroad in St. Joseph, Missouri. Its tracks, seven miles in length, extend from the southern to the northern part of the city. The Pioneer Sand Company's yard is west of defendant's main line and east of the Missouri River. A switch track from the main line extends in a southwesterly direction into said yard. A wagon road from the north parallels the switch track, turns west crossing the track and extends into said yard. Sand from the river is stored in large quantities on the east side of a barricade along the east side of and close to the switch track, and between the track and roadway. Cars are loaded from the sand so stored. Plaintiff was foreman of a switching crew of defendant. On July 28, 1927, he was directed by a switch list, furnished by the yard office, to do certain switching and transferring in and about the yards. In performing those duties he transferred from a string of cars to the Sand Company switch track, three empty coal cars to be loaded with sand. He then, over defendant's main line, proceeded north about two miles with five cars for delivery to the Great Western Railroad Company. After delivering those cars, he returned with the engine and crew to the Sand Company switch track, coupled the engine to the north empty coal car, moved the three empty coal cars south, and coupled the south empty to a car loaded with sand. He testified that he then gave the engineer a signal to move south; that the engineer disobeyed the signal by moving the cars north; that in walking, he slipped in the loose sand on and along the east side of the track, and for that reason he held to the grab iron on the southeast side of the south empty car; that the movement of the cars north, on his signal to the engineer to move south, caused him to stumble through the loose sand and his foot to be caught and held in wire covered by sand; that this situation and the continued movement of the cars north forced him to loosen his hold of the grab iron, thereby causing him to fall under the car. This resulted in permanent injury to plaintiff.

Some of the cars for delivery to the Great Western were in interstate commerce. The other cars handled by the crew as directed by the switch list were in intrastate commerce.

It is alleged (1) that at the time of the injury, plaintiff and defendant were engaged in interstate commerce; (2) that defendant negligently permitted wire with which its employees were likely to become entangled, to extend under the sand and along the east side of the track; (3) that defendant negligently moved the cars northward, thereby causing plaintiff to become entangled in the wire.

The answer was a general denial with pleas of assumption of risk

and contributory negligence, and with an affirmative plea that plaintiff and defendant at the time were not engaged in interstate commerce. The trial proceeded as if the reply was a general denial.

The principal question for consideration is stated by defendant as follows:

"Plaintiff's case was prosecuted solely upon the theory that some of the cars delivered to the Great Western yards were interstate cars, and that the switching of the sand cars by plaintiff, on the return of the engine from the Great Western yards, which were not being moved in interstate commerce, was merely a part of the movement and delivery of the cars to the yards of the Great Western Company.

"The case was defended upon the theory that after the delivery of the interstate cars to the yards of the Great Western Company plaintiff had returned to the Sand Company switch for the purpose of placing the three empty cars in the Sand Company yards and pulling out the car loaded with sand for the purpose of taking it back with him to track number three, there to be delivered to the Burlington Company, and that as all the Sand Company cars were destined to points in the State of Missouri, plaintiff was engaged in switching intrastate cars, and that he must look to the Workmen's Compensation Act for redress for the injuries sustained by him.

"The defendant also contends that even if the plaintiff had not intended to do anything more than push the three empty sand cars clear from the roadway as described by him, and had intended to return later that night for the purpose of finishing the placing of the sand cars and to pull out the loaded car, nevertheless he had fully completed the delivery of the interstate cars to the yards of the Great Western Company, and was not engaged in any work pertaining to interstate commerce at the time he was injured."

There is evidence tending to sustain both theories of the case. It follows that plaintiff's right to seek recovery under the Federal Employers' Liability Act must be determined from the evidence most favorable to him.

There is evidence tending to show the following:

Defendant's main line extends north two miles and connects with the Great Western yards. There was no usable switch track connecting with the main track between the two railroad yards. For this reason plaintiff telephoned the yard office of the Great Western stating that he had a transfer of cars for them, and inquiring if they were moving cars south on defendant's main line. They answered: "No," but to hurry with the transfer, for they had cars about ready for movement south over the main line. Thereupon plaintiff switched the three empty coal cars from the front end of

a string of eight cars to the Sand Company switch track. The cars stopped on the wagon-road crossing. Plaintiff left the crossing blocked, proceeded north over the main line with the five cars and delivered them to the Great Western. After doing so, he returned with the engine and crew to the Sand Company switch track to open the crossing. They arrived at said track at six o'clock P. M. He then proceeded to move the cars from the crossing "before supper," under an order from the yard master to spot no cars on the crossing. In moving the cars to open the crossing, he was injured.

The question arises on the nature of the employment of plaintiff at the time of injury. The rule is stated as follows: "Having in mind the nature and usual course of the business to which the act relates and the evident purpose of Congress in adopting the act, we think it speaks of interstate commerce, not in a technical legal sense, but in a practical one better suited to the occasion (see Swift & Co. v. United States, 196 U. S. 375, 398), and that the true test of employment in such commerce in the sense intended is, was the employee at the time of the injury engaged in interstate transportation or in work so closely related to it as to be practically a part of it." [Shanks v. Delaware, Lackawanna & Western R. R. Co., 239 U. S. 556, 1. c. 558.]

It also has been ruled that: "Each case must be decided in the light of the particular facts with a view of determining whether, at the time of the injury, the employee is engaged in interstate business, or in an act which is so directly and immediately connected with such business as substantially to form a part or a necessary incident thereof." [N. Y. Central & Hudson River R. R. Co. v. Carr, 238 U. S. 260, 1. c. 263-4.]

It also has been ruled that the question "turns upon no interpretation of the act of Congress, but involves simply an appreciation of the testimony and admissible inferences therefrom in order to determine whether there was a question to be submitted to the jury as to the fact of employment in interstate commerce." [Erie R. R. v. Welsh, 242 U. S. 303, 1. c. 306.]

Plaintiff contends that opening the crossing after the delivery to the Great Western was incidental to and practically a part of said delivery, for the reason said work (opening the crossing) was deferred to hasten delivery to the Great Western. In other words, the contention is an effort to unite the movement to open the crossing with a particular movement in interstate commerce. Opening the crossing did not partake of the work as a whole. Plaintiff controlled the order of the different movements directed by the switch list, and it may be that the delivery to the Great Western was hastened by deferring the opening of the crossing. If so, the act of deferring the

opening of the crossing was in furtherance of interstate commerce, for it occurred before the completion of the movement in interstate commerce. But after the delivery of the cars to the Great Western, there was no interstate movement with which the movement of the cars to open the crossing could be connected. How could a movement of cars be connected with no movement? Furthermore, after the delivery of the interstate cars, the fact that the crossing was blocked did not further or interfere with a movement or movements in interstate commerce. We do not think plaintiff was employed in interstate commerce at the time of his injury. The court should have directed a verdict for defendant. We have considered the cases cited by plaintiff. They do not rule the question presented in this case. The facts are different.

It follows that the judgment should be reversed. It is so ordered. All concur.