ETHEL SHEEHAN, Administratrix of the Estate of WILLIAM SHEEHAN, Appellant, v. TERMINAL RAILROAD ASSOCIATION OF ST. LOUIS, a Corporation.—81 S. W. (2d) 305.

Court en Banc, March 9, 1935.

710

*Eagleton, Henwood & Waechter* and *Frank P. Aschemeyer* for appellant.

*T. M. Pierce, J. L. Howell* and *Walter N. Davis* for respondent.

WESTHUES, C.—Appellant, as administratrix of her husband's estate, filed suit against respondent, under the Federal Employers'

Liability Act, to recover damages in the sum of $75,000 for the death of her husband. Upon trial the jury returned a verdict for respondent and from the judgment entered appellant appealed.

The deceased, William Sheehan, was employed by respondent, Terminal Railroad Association at the Union Station and yards at St. Louis, Missouri. On October 5, 1928, while oiling an elevator, he was struck and seriously injured by a train which was backing into the Union Station. As a result of these injuries he died on September 23, 1929.

Appellant's only assignment of error was that the trial court erred in the giving of two instructions requested by respondent. Respondent maintains that deceased, at the time he was injured, was not engaged in work connected with interstate transportation and, therefore, appellant was not entitled to maintain the present suit. We will first dispose of this question and if it is decisive of the case the other questions need not be discussed.

The record discloses that passenger trains arriving in St. Louis, on the various railroad tracks, are backed into a train shed at the Union Station for the purpose of discharging passengers and unloading baggage, mail and express. The tracks extend in a north and south direction with the station to the north. A platform about twelve feet wide between each set of two tracks serves as a passageway for passengers going to and coming from the trains. Near the south end of the platform, which serves tracks numbers six and seven, is located the elevator deceased was oiling at the time of the accident. The elevator is five feet in width and sixteen feet in length. It is utilized in lowering incoming express, baggage, etc., to a subway below and in elevating to the platform outgoing shipments. On the east side of the elevator there is a space of only about fourteen inches between the sides of cars passing or standing on track number seven and the elevator. At the time of the accident Southern Railway train number two was standing on track seven some distance north of the elevator near the station. The elevator was being used, at the time of the accident in transporting express brought in on train number two. While deceased was oiling the elevator an employee of an express company was waiting with a truck loaded with express to be lowered by means of the elevator. At this time a local intrastate Frisco passenger train backed into the train shed over track number seven. Deceased was caught between the elevator and the cars of this train and received serious injuries. The labor of unloading the express and trucking it to the express depot was being performed by employees of the express company and not by employees of the respondent.

The charges of negligence in the petition were, excessive speed and failure to give customary warning signals. The evidence was conflicting as to the charges of negligence. Substantial evidence was

offered pro and con on the issues sufficient to support a verdict either for respondent or for appellant. It was admitted that respondent railroad company was the owner of the Union Station and that it maintained the particular elevator mentioned in evidence; also that respondent was engaged in interstate commerce. For the purpose of this opinion we are not holding that respondent admitted the deceased was engaged in work connected with interstate transportation so as to come within the Federal Employers' Liability Act.

The vital question affecting appellant's suit is whether or not deceased was engaged in work connected with interstate transportation. The elevator was used in carrying both interstate and intrastate shipments. Respondent contends that it should be classed as a part of the station and, therefore, is too remote to be considered as an instrument connected with the movement of interstate shipments, citing a long list of cases. Among them are: Cox v. Mo. Pac. Railroad Co., 61 S. W. (2d) 962, 332 Mo. 991; Phillips v. Ry. Co., 328 Mo. 240, 40 S. W. (2d) 1046; Jarvis v. Railroad, 327 Mo. 428, 37 S. W. (2d) 602; Industrial Acc. Comm. v. Davis, 259 U. S. 182, 66 L. Ed. 888; Minn. & St. L. Railroad Co. v. Nash, 242 U. S. 619, 61 L. Ed. 531; Shanks v. Delaware, L. & W. Railroad Co., 239 U. S. 556, 60 L. Ed. 436; Chicago & N. W. Ry. Co. v. Bolle, 284 U. S. 74, 52 Sup. Ct. 59, 76 L. Ed. 173; Chicago & Eastern Ill. Railroad Co. v. Industrial Comm., 284 U. S. 296, 52 Sup. Ct. 151, 76 L. Ed. 304.

From an examination of these cases it will be noted that the United States Supreme Court has definitely declared that the true test to be applied to the question of whether an injured employee may maintain an action under the Federal Employers' Liability Act, "is whether such employee, at the time of the injury, was engaged in interstate transportation or in work so closely related to it as to be practically a part of it." [Cox v. Mo. Pac. Railroad Co., 332 Mo. 991, 61 S. W. (2d) 962, l. c. 965 (4, 5).] Much difficulty has been experienced, however, in applying the test to the various circumstances in which employees were within the protection of the act. In Industrial Acc. Comm. v. Davis, 42 Sup. Ct. 489, l. c. 491, an engine was placed in the repair shop December 19, 1918, and replaced in service on March 4, 1919. While in the repair shop, on February 1, an employee working on the engine was injured. The court held that the engine had been withdrawn from interstate commerce and the employee was not protected by the act. In the course of the opinion the court said:

"We refrain from a review of our cases. They pronounce a test and illustrate it. We are called upon to apply it to the present controversy. The federal act gives redress only for injuries received in interstate commerce. But how determine the commerce? Commerce is movement, and the work and general repair shops of a railroad, and those employed in them, are accessories to that movement,

indeed, are necessary to it, but so are all attached to the railroad company, official, clerical or mechanical. Against such a broad generalization of relation we, however, may instantly pronounce, and successively against lesser ones, until we come to the relation of the employment to the actual operation of the instrumentalities for a distinction between commerce and no commerce. In other words, we are brought to a consideration of degrees, and the test declared, that the employee at the time of the injury must be engaged in interstate transportation or in work so closely related to it as to be practically a part of it, in order to displace state jurisdiction and make applicable the federal act. And there is a difference in the instrumentalities. In some, the tracks, bridges and roadbed and equipment in actual use, may be said to have definite character and give it to those employed upon them.''

It has been held that employees repairing a depot, Minneapolis & St. Louis Railroad Co. v. Nash, 242 U. S. 619, 61 L. Ed. 531; oiling an electric crane used in a railway shop to repair engines and cars engaged in interstate and intrastate commerce, Tepper v. Railroad, 238 N. Y. 423, 144 N. E. 668; repairing a coal chute used for coaling engines used in the movement of interstate and intrastate commerce, Capps v. Atl. C. L. Railroad Co., 178 N. C. 558, 101 S. W. 216, certiorari denied, 252 U. S. 580, were not protected by the Federal Employers' Liability Act. [See, also, Allen v. Frisco, 331 Mo. 461, 53 S. W. (2d) 884.] On the other hand, in Larkin v. New York Central Ry. Co. (N. Y.), 225 App. Div. 109, an employee, the plaintiff, who was injured, because of a defective truck, while on his way to get trunks and other baggage intended for an interstate journey, was held to have been engaged in interstate commerce so as to come under the Federal Act. A dissenting opinion in that case agreed with the majority that if plaintiff, at the time, was trucking baggage intended for interstate shipment then the act applied. But the dissenting opinion held that plaintiff, at the time of his injuries, was not so engaged. So in Ill. Cent. Ry. Co. v. Porter, 125 C. C. A. 55, 207 Fed. 311, the Circuit Court of Appeals, Sixth Circuit, held that a truckman, employed by a railroad company to haul interstate freight from a warehouse to the railroad car to be transported into another state, was engaged in interstate commerce within the meaning of the Federal Act. It will also be noted that employees of railroads loading and unloading interstate freight are generally held to be engaged in interstate commerce within the meaning of the act. [Jonas v. Mo. Pac. Ry. Co. (Mo. App.), 48 S. W. (2d) 123, certiorari denied, 53 Sup. Ct. 13; Baltimore & Ohio S. W. Ry. Co. v. Burtch, 44 Sup. Ct. 165, 263 U. S. 540, 68 L. Ed. 433; Maher v. St. Louis & S. F. Railroad Co., 234 S. W. 1034, 208 Mo. App. 304.]

Respondent in his brief says:

''The oiling of said elevator, a portion of said depot, even though

it was used indiscriminately in carrying interstate and intrastate freight to and from the platform and subway, was not interstate transportation or work so closely related to it as to be a part of it.''

It is further suggested that at the time of deceased's injuries the elevator was not being utilized in handling interstate shipments and that the men who loaded and unloaded express were employees of the express company. An express company, it has been held, is not a carrier of commerce by railroad within the meaning of the Federal Act. [Wells Fargo & Co. v. Taylor, 254 U. S. 175.]

In our opinion the question does not depend upon whether the elevator, at the time plaintiff was injured, was being used in the transportation of interstate shipments, or whether it had been immediately prior thereto, or whether it was about to be so used, but, if it was an instrumentality used indiscriminately in carrying interstate and intrastate freight, as respondent suggests, to and from the platform and subway then must it not be so classified that employees of the railroad company, while repairing it, were engaged in work connected with interstate commerce within the meaning of the act? Does not the elevator in a sense perform services of the same nature as employees of the railroad who operate trucks to and from a baggage room and trains? Does not the elevator save labor which if performed by employees would come within the act? Does not the use of the elevator aid directly in transporting interstate freight and baggage to and from the trains? If the employees of railroad companies who load and unload interstate shipments and transfer such freight and baggage to and from the trains and baggage room or storehouse by trucks are engaged in interstate commerce within the meaning of the act then we can see no good reason why the elevator which is utilized in carrying these trucks to and from the platform and subway should not be classified along with railroad tracks, bridges and turntables as an instrumentality used in the transportation of interstate commerce. In Kepner v. Cleveland, C., C. & St. Louis Ry. Co., 322 Mo. 299, 15 S. W. (2d) 825, this court held that the plaintiff in that case, while adjusting a standpipe on a turntable, was engaged in work directly connected with interstate transportation. Deceased, therefore, was, while oiling the elevator, protected by the provisions of the Federal Employers' Liability Act. He was an employee of respondent railroad company and was injured while at work upon an instrumentality directly utilized in the aid of interstate transportation. The fact that he was injured by an intrastate train or that the employees of an express company were, at the time, waiting to use the elevator did not alter the situation. In Industrial Acc. Comm. v. Davis, supra, the Supreme Court of the United States said:

''And there is a difference in the instrumentalities. In some, the tracks, bridges and roadbed and equipment in actual use, *may be*

*said to have definite character and give it to those employed upon them."* (Italics ours.)

In Chicago & N. W. Ry. Co. v. Bolle the Supreme Court of the United States said:

"It will be observed that the word used in defining the test is 'transportation,' not the word 'commerce.' The two words were not regarded as interchangeable, but as conveying different meanings. Commerce covers the whole field of which transportation is only a part; and the word of narrower signification was chosen understandingly and deliberately as the appropriate term. The business of a railroad is not to carry on commerce generally. It is engaged in the transportation of persons and things in commerce; and hence the test of whether an employee at the time of his injury is engaged in interstate commerce, within the meaning of the act, naturally must be whether he was engaged in interstate transportation, or in work so closely related to such transportation as to be practically a part of it."

Under the authorities cited and discussed we have reached the conclusion that deceased, at the time he was injured, was engaged in work upon an instrumentality used in aid of interstate transportation and, therefore, the act applies.

Instructions numbers four and five, given by the trial court at respondent's request, and the giving of which was assigned as error by appellant, pertain to the burden of proof. Instruction No. 4 reads as follows:

"The charge laid by plaintiff against the defendant is one of negligence. Negligence is a positive wrong, and therefore in this case is not presumed. In other words, a recovery may be had on a charge of negligence only when such charge is sustained by the preponderance, that is, the greater weight, of the credible evidence to the reasonable satisfaction of the jury that the charge is true as laid, and it does not devolve upon the defendant to disprove the charge, but, rather, the law casts the burden of proof in respect of it upon the plaintiff, and such charge of negligence must be sustained by the preponderance, that is, the greater weight, of the credible evidence to the satisfaction of the jury, as above stated. If, therefore, you find the evidence touching the charge of negligence against defendant to be evenly balanced, or the truth as to the charge of negligence against defendant remains in doubt in your minds, after fairly considering the evidence, your verdict must be for the defendant."

By Instruction No. 5 the court instructed the jury that plaintiff had the burden of proving the specific charge of negligence. (That is, the failure to give deceased the customary warning of the approaching train.) The latter part of this instruction reads as follows:

"If, therefore, you find the evidence with reference to the sounding of the warning as aforesaid evenly balanced, and there remains

in your minds doubt as to whether or not the warning was given after fairly considering all the evidence, your verdict must be for the defendant.''

Similar instructions were held erroneous in recent cases, by this court. Payne v. Reed, 332 Mo. 343, 59 S. W. (2d) 43; Aly v. Terminal Railroad Association of St. Louis, 336 Mo. 340, 78 S. W. (2d) 851, where the question was discussed at length, and the following cases among others were cited holding instructions of that nature erroneous: Williams v. Watson, 34 Mo. 95; Bauer Grocery Co. v. Sanders, 74 Mo. App. 657, l. c. 660; Lumsden v. Howard, 236 S. W. 420, l. c. 422 (4), 210 Mo. App. 645; Rothschild v. Am. Cent. Ins. Co., 62 Mo. 356; Thompson Lumber Co. v. Interstate Commerce Commission, 193 Fed. 682, l. c. 684; also 23 Corpus Juris, page 12, section 1745, and 64 Corpus Juris, page 710, section 619, and cases from other jurisdictions. All of the authorities cited are in accord in holding that the instructions under discussion cast upon the plaintiff a greater burden on the question of proof than the law requires and are, therefore, erroneous. Such an instruction goes to the substance of plaintiff's right of action and cannot be classified as a matter of procedure.

The error of the court in giving instructions numbers four and five requires a reversal of the case that plaintiff may have a new trial. It is so ordered.

PER CURIAM:—The foregoing opinion by WESTHUES, C., in Division Two, is adopted as the opinion of the Court en Banc. *Frank, C. J., Coles, Leedy* and *Tipton, JJ.,* concur; *Gantt, Hays* and *Ellison, JJ.,* dissent.