CLARENCE GARDNER and VERA GARDNER, Appellants, v. HENRY C. TURK.—123 S. W. (2d) 158.

Division Two, December 20, 1938.

*F. P. Sizer, H. T. Lincoln* and *Andrew Howard* for appellants.

*Sam Wear, Cowgill & Popham* and *Guy Green, Jr.,* for respondent.

904

COOLEY, C.—This action was brought by plaintiffs, Clarence and Vera Gardner, to recover damages for the death of their minor son, Eugene, aged eleven years, who it is claimed was struck and killed by defendant's automobile, driven by himself. There was a verdict and judgment for defendant, from which plaintiffs appealed. The questions presented by the appeal relate to the giving of certain instructions on behalf of defendant and the refusal of one requested by plaintiffs.

The petition alleges two specifications of negligence, viz.: Negligence under the humanitarian doctrine, in that defendant saw or by the exercise of the highest degree of care could and would have seen the deceased in a position of imminent peril in time thereafter to have avoided striking him; and that defendant negligently drove his car at a speed of more than twenty-five miles an hour in violation of an ordinance of Springfield, the city in which the accident occurred. The answer is a general denial coupled with a plea of contributory negligence. By plaintiffs' instructions both of their pleaded specifications of negligence were submitted to the jury.

Plaintiffs' evidence tended to show the following:

The Gardners lived at No. 1412 South Campbell Avenue, a north and south street in Springfield. Several blocks north of their residence said avenue intersects Delmar Street, an east and west street. State Street, an east and west street, is north of Delmar. The accident happened on Campbell Avenue south of Delmar. The *locus in quo* is in the residential section of the city. At the time in ques-

tion Campbell Avenue was surfaced with "black top" or some such material and was much used by automobiles, also by pedestrians since, at the place in question, there were no sidewalks on either side and the ground was rough. A witness for plaintiffs testified "It (the pavement) is much used by both automobiles and pedestrians day and night. Most people walk on the pavement. Quite a number of people live south of Delmar on Campbell Avenue." There was other testimony to the same effect.

On the evening of October 10, 1934, about seven o'clock, Eugene and his older brother, Leonard, aged thirteen, left their parents' home with the knowledge and consent of the parents, to go to a picture show. Their natural course was to go north on Campbell Avenue past the Delmar Street intersection. They started together but their plan, known to the parents, was to separate at a point some distance south of Delmar, whence Leonard was to go east on his paper route and Eugene was to go on north on Campbell Avenue to its intersection with State Street, where the boys were to meet and from there go on to the theater. They separated as per agreement. When Leonard reached the appointed meeting place and Eugene failed to appear he went on to the show alone. After his return home unavailing search was made for Eugene that night. His body was found next morning in the ditch along the east side of the Campbell Avenue pavement, a short distance south of the Delmar Street intersection. One witness who saw the body in the ditch said it was about ten feet south of Delmar. Wounds on the body indicated he had been struck and killed by an automobile. No witness for plaintiffs saw the accident but there was circumstantial evidence tending to show that it was defendant's car which struck Eugene, that defendant was driving it and that he had stopped hurriedly—as shown by skid marks on the pavement—and had got out of his car and looked about as though searching for something. A police officer, Brown, testified also that defendant came to the police station that night and reported that "he thought he had had an accident on South Campbell and wanted me to go back there with him." They went and defendant pointed out the place where he had "felt the impact or jar, or whatever it was," which place was 177 feet south of Delmar. These distances are referred to because there was evidence that there was a street light at the Campbell-Delmar intersection. Mrs. Gardner testified she had instructed Eugene to walk on the left side of the pavement. Mr. Gardner testified he had given his son no instructions on that subject.

Plaintiffs introduced Section 53 of an ordinance of Springfield, governing the speed of automobiles, which so far as pertinent is as follows:

"Section 53. Restrictions as to Speed.

"(a) Basic Rule.

"No person shall drive a vehicle upon a highway at a speed greater than is reasonable and prudent, having due regard to the traffic, surface and width of the highway and the hazards at intersections and any other conditions then existing.

"Nor shall any person drive at a speed which is greater than will permit the driver to exercise proper control of the vehicle and to decrease speed or to stop as may be necessary to avoid colliding with any person, vehicle or other conveyance upon or entering the highway in compliance with legal requirements and with the duty of drivers and other persons using the highway to exercise due care, provided that this provision shall not be construed to relieve the plaintiff in any civil action from the burden of proving negligence upon the part of the defendant as to the proximate cause of an accident.

"Any person violating the above basic rules shall be guilty of a misdemeanor.

"(b) Application of Indicated Speeds.

"Any person who drives a vehicle upon a street or highway at a speed in excess of that indicated as follows for the particular district or location and who, while so driving, violates the basic rule set forth in Subdivision (a) shall, upon a first conviction be punished by imprisonment in the county or municipal jail for a period of not less than five days nor more than sixty days, or by a fine of not less than $1.00 nor more than $300.00 and costs, or by both such fine and imprisonment."

The "indicated speed" for "any residential district" is twenty-five miles per hour.

Plaintiffs pleaded that defendant negligently drove in excess of twenty-five miles per hour in violation of the ordinance, the place in question being in the residential section of the city, but without otherwise stating facts to bring that alleged negligence within the "basic rule" prescribed by subdivision (a) of the ordinance and their instruction on that specification told the jury that if defendant drove his car in excess of twenty-five miles an hour and the place was in a residential section such operation of the car was negligence.

Defendant testified on direct examination:

"I was driving north on Campbell Avenue on the night of October 10, 1934. Somewhere south of Delmar Street I felt a jolt or shock to my car. A car was approaching from the north. Its headlights blinded me. When I felt a shock, I applied my brakes and then released them and came to a gradual stop. I then backed up south of the intersection of Delmar. I got out of my car and looked up

and down the ditch. I started on to town, but turned around, drove back, parked on the west side of Campbell Avenue, headed south, and looked farther south than I had before. I did not have a flashlight. I then went to the police station and got Officer Brown and we looked along Campbell Avenue south of Delmar with a flashlight.''

He further testified in effect that he did not see the object he struck or that struck his car and did not know whether ''it came in from the side or front, or how.'' On cross-examination he said that he estimated his speed, prior to and at the time he felt the ''jolt or shock,'' at about thirty-five miles per hour; that he had good brakes and good lights. He could not give the time or distance in which his car, going at thirty-five miles an hour, could have been stopped. There was no evidence on that subject.

Plaintiffs' Instruction No. 1 submitted the issue of negligence under the humanitarian doctrine; their Instruction No. 2 submitted the issue of primary negligence, viz., violation of the speed ordinance and death of deceased as a direct result thereof. Instruction No. 1 contained no reference to defendant's speed or to the ordinance. Plaintiffs' Instruction No. 3 was on the measure of damages, and No. 5 defined ''highest degree of care.''

I. Defendant's Instruction A, of which complaint is made, reads:
''Instruction A.

''The court instructs the jury that the mere fact of itself that decedent lost his life and his parents have brought suit claiming defendant was negligent is no evidence whatever that defendant was in fact negligent.

''Negligence is not in law presumed, but must be established by proof as explained in other instructions. •

''Neither are you permitted to base a verdict entirely and exclusively on mere surmise, guesswork and speculation; and if upon the whole evidence in the case, fairly considered, you are not able to make a finding that defendant Turk is liable without resorting to surmise, guesswork and speculation outside of and beyond the scope of the evidence, and the reasonable inferences deductible therefrom, then it is your duty to and you must return a verdict for defendant Turk.''

Appellants say that said instruction was erroneous because: 1st, it was a lecture to the jury on its duty to the defendant and failed ''to cover the duty of the jury on the whole case;'' 2nd, the closing words ''you must return a verdict for the defendant'' are objectionable; 3rd, there was no ground or need for the jury to resort to surmise or speculation in order to find negligence on the part of defendant.

On the proposition that said instruction is a lecturing instruction

appellants cite Unterlachner v. Wells (Mo.), 278 S. W. 79. That decision does not sustain said contention. The instruction there criticized on that ground is so unlike the one before us as to make that decision inapplicable. The first paragraph of Instruction A was in the nature of a cautionary instruction. The giving or refusal of cautionary instructions is usually largely within the discretion of the trial court. It has been said that they should be used with caution. [Wolfson v. Cohen (Mo.), 55 S. W. (2d) 677, 681.] The latter case also quotes and discusses an instruction there claimed to be a "lecturing instruction" and distinguishes Unterlachner v. Wells, supra. In the instant case the fact of itself that decedent lost his life could not have thrown any light on the question of defendant's alleged negligence. [See Wolfson case, supra; Sharp v. City of Carthage, 319 Mo. 1028, 5 S. W. (2d) 6.] In the Sharp case an instruction, similar in this respect, was discussed and was held not erroneous. The court distinguished several prior cases in which the character of the injuries received tended to sustain the charge of negligence alleged.

That the closing words of the instruction did not render it erroneous and the reason for so holding, see King v. Rieth, 341 Mo. 467, 108 S. W. (2d) 1, 6 [11-12].

Appellants' third criticism of Instruction A we think is sufficiently answered, adversely to them, in Griffith v. Continental Casualty Co., 299 Mo. 426, 253 S. W. 1043. The burden of proving that defendant had been negligent and that deceased's death resulted therefrom rested upon the plaintiffs. It was not sufficient for them to prove *only* that deceased had been struck and killed by defendant's car. Absent evidence from which it could reasonably be found that defendant had been guilty of the negligence charged there could be no recovery. In Griffith v. Continental Casualty Co., supra, a similar instruction, telling the jury that a finding for the plaintiff on the issue there involved, the burden of proving which rested upon her, could not be based on conjecture or guess but must be based upon the evidence, was approved. The instructions in the Griffith case further told the jury that the burden rested upon the plaintiff to prove the disputed fact by the preponderance of the evidence and if she had not done so, or if, under the evidence, the jury could not determine the fact they could not find said issue for the plaintiff. That Instruction A was not erroneous in the further direction that negligence was not presumed but must be proved see Oliver v. Morgan (Mo.), 73 S. W. (2d) 993, where a similar instruction was approved. Under the evidence in this case we think the giving of Instruction A was justified. In so saying we do not overlook the fact that said instruction as worded applied to both specifications of negligence sub-

mitted, nor the fact that defendant admitted he drove in excess of twenty-five miles an hour. It was necessary in order to sustain either specification that negligence on the part of defendant be established. Under the humanitarian doctrine it is well settled that antecedent negligence, in this case defendant's speed before he saw or should have discovered deceased in a position of imminent peril, cuts no figure. The issues "must be determined from evidence tending to show the conduct of defendant at the time and after the 'peril arose.'" [Taylor v. Superior Oxy-Acetylene Co., 335 Mo. 379, 382, 73 S. W. (2d) 186, 187 (1-3).] As to the alleged violation of the speed ordinance it is to be observed that the ordinance does not make a speed exceeding twenty-five miles an hour *ipso facto* and without qualification a violation thereof. It lays down a "basic rule" and provides that one who drives at a speed greater than that indicated for the particular district and who, while so driving, *violates said basic rule*, shall be subject to the penalty prescribed. Moreover it declares that said basic rule provision "shall not be construed to relieve the plaintiff in any civil action from the burden of proving negligence upon the part of the defendant as to the proximate cause of an accident."

II. Appellants say the court erred in giving defendant's Instruction C which told the jury that no allowance of damages could be made for "bereavement, grief or any mental anguish or suffering on the part of the boy or the relatives of the deceased" and that the recovery, if any, should be limited to the actual pecuniary loss sustained by the parents "as set forth in these instructions." Plaintiffs' instructions limited recovery to their pecuniary loss and set forth the elements to be considered in determining same. In their brief they say that the law in cases like this does not authorize recovery for bereavement, grief, etc., and they were not asking therefor, hence defendant's instruction was unnecessary and should not have been given. They cite Koebel v. Tieman Coal & Material Co., 337 Mo. 561, 85 S. W. (2d) 519, wherein the jury were told by the defendant's instruction that they should not allow anything for medical or hospital expenses. The court said that reimbursement for such expenses was not sought, that there was no occasion to give said instruction and that it should not have been given. The court did not say however that it constituted reversible error. There was other and clearly reversible error in the case and we think the reversal was on account of such other error. Vanderbeck v. Wabash Ry. Co. (Mo. App.), 133 S. W. 1178, cited by appellants, only held, without discussion, that the trial court had not erred in refusing an instruction asked by the defendant that the plaintiff could not recover for loss of wages, time and expenses when nothing of that nature was asked by the plaintiff.

In the instant case, the jury found for defendant, which means they

found defendant was not liable at all. They had no occasion to consider the measure or amount of damages to be awarded. The error, if any, in giving Instruction C was harmless under the circumstances. See Bennette v. Hader, 337 Mo. 977, 87 S. W. (2d) 413, where an instruction similar in effect and in principle is discussed and held not reversible error.

III. Appellants complain of defendant's Instruction D, reading:
"Instruction D.

"The court instructs the jury that the law does not require defendant Turk to introduce any evidence whatever in disproof of the claim that he was guilty of negligence, but on the contrary the law casts upon plaintiffs as to this particular issue the burden of establishing to the reasonable satisfaction of the jury by the greater weight of all the credible evidence in the case that defendant Turk was guilty of negligence as submitted in other instructions, and if they have not discharged such burden or if the evidence touching the issues of defendant's alleged negligence is evenly balanced or preponderates in his favor, then in either of such events your verdict must be for defendant Turk."

Appellants' contention as to this instruction is that it in effect tells the jury that plaintiffs must prove defendant's negligence beyond a reasonable doubt and thus puts upon them a greater burden of proof than the law requires. The point is not further explained or elaborated, but from the cases cited we think it must have reference to the concluding portion of the instruction, that if the evidence as to defendant's negligence is evenly balanced or preponderates in his favor the verdict must be for him. Appellants cite Aly v. Term. Railroad Assn., 336 Mo. 340, 78 S. W. (2d) 851; Sheehan v. Term. Railroad Assn., 336 Mo. 709, 81 S. W. (2d) 305; Koebel v. Tieman Coal & Material Co., supra; and Dempsey v. Horton, 337 Mo. 379, 84 S. W. (2d) 621. In the Aly case the concluding portion of the instruction read: "If, therefore, after fairly considering the evidence . . . the truth as to the charge of negligence against defendant *remains in doubt in your minds,* your verdict must be for the defendant." (Italics ours.) The instruction was held reversibly erroneous because of the words we have italicized, which cast upon the defendant the burden of proving the charge of negligence by such a preponderance of the evidence as to remove any doubt in the minds of the jury as to such charge;—a burden of proof greater even than rests upon the State in a criminal case, where the proof need convince the jury only beyond a reasonable doubt. The other cases cited approve and follow the Aly case on that proposition. They are not in point here. The instruction before us contains no such direction. This contention of appellants cannot be sustained.

Appellants further contend that said Instruction D places upon

plaintiffs the entire burden of proof without stating that the burden of proof on the issue of contributory negligence rested on defendant. This contention likewise must be denied. The instruction clearly deals only with the question of *defendant's* negligence and is specifically limited to that issue. It does not refer to contributory negligence nor purport to place upon plaintiffs the burden of proof as to all issues in the case. Of course if plaintiffs failed to establish by a preponderance of the evidence that defendant had been negligent their case failed because that burden rested upon them and, as we have said, absent negligence on the part of defendant there could be no recovery. But that is not saying that the burden of disproving contributory negligence rested on plaintiffs. A similar instruction was approved in Linders v. People's Motorbus Co., 326 Mo. 695, 32 S. W. (2d) 580, which case fully answers this contention. [See, also, Dietz v. Magill (Mo. App.), 104 S. W. (2d) 707, 710; Bleil v. Kansas City (Mo.), 70 S. W. (2d) 913.]

IV. It is claimed that the court erred in giving defendant's Instruction E, which reads:

"Instruction E.

"The court instructs the jury with regard to Instruction No. 1, which embraces what is known as the last-chance doctrine, that said instruction covers only such time or period as existed after you may believe Turk saw, or by the exercise of the highest degree of care could have seen, that decedent was in a position of imminent peril, if he was, and in deciding the issues under said foregoing instruction you cannot find him guilty of any prior negligence or negligent speed claimed to have existed before he saw, or by the exercise of such care could have seen, decedent in peril, if so, and unless you are able to make a finding under said instruction that, considering all the circumstances shown in evidence, Turk saw, or by the exercise of such care could have seen, decedent in imminent peril in time thereafter, by the exercise of the highest degree of care, to have then and there avoided contact with him, if he did come in contact with him, then you cannot find for plaintiffs under the aforesaid Instruction No. 1 embracing the so-called last-chance or humanitarian doctrine."

The criticism of this instruction is that it says defendant cannot be held negligent on account of excessive speed before he saw or should have seen deceased in peril; that defendant testified he had not slackened his speed of about thirty-five miles an hour until he felt the shock to his car and the instruction therefore was not in accord with the evidence and was misleading.

Said instruction specifically referred to and dealt only with negligence under the humanitarian doctrine, as submitted by plaintiffs' Instruction No. 1. Plaintiffs by their instructions submitted both that and primary negligence, viz., excessive speed. Defendant was

entitled to have the law as to both issues defined. As to negligence under the humanitarian rule defendant's antecedent negligence, if any, was not to be considered, as we have pointed out, and under the evidence and in the circumstances of this case the court did not err in so informing the jury. We think this conclusion is sustained by the reasoning and the principle stated in Pence v. Kansas City Laundry Service Co., 332 Mo. 930; 59 S. W. (2d) 633. While the instruction in question may not be happily worded in saying ''you cannot *find him guilty of any prior negligence,*'' etc., the meaning and effect of the instruction as a whole is that liability under plaintiffs' Instruction No. 1 could not be based on such prior negligence, if any, and we think the jury would clearly so understand, especially in view of all the instructions. Other instructions dealt with the issue of primary negligence. We rule this point against appellants.

V. Defendant's Instruction F is complained of. It is rather long and we deem it unnecessary to take space to quote it. It is an instruction on contributory negligence applicable and by its terms specifically limited to the issue of primary negligence as submitted by plaintiffs' Instruction No. 2. Appellants make two complaints of this instruction: a, that it placed too great a burden of care on them in that it required that both parents should have exercised ordinary care; and b, that there was no evidence of contributory negligence. As to a, the instruction submitted contributory negligence on the part of the deceased, hypothesizing the facts that would constitute it (of which part of the instruction there is no complaint), and further hypothesized the facts which would constitute contributory negligence on the part of the ''parents'' (using the term in the plural), and concluded thus: ''and that they thereby failed to use ordinary care for the safety of their son, if you so find, and that the above failures on the part of said parents and the aforesaid negligence, if any, on the part of the decedent, Eugene Gardner, directly contributed to and directly caused his death, then you cannot find for plaintiffs under Instruction No. 2, referring to speed, and the ordinance.''

Appellants cite on this point Howard v. Scarritt Estate Co., 267 Mo. 398, 184 S. W. 1144, and Winters v. K. C. Cable Ry. Co., 99 Mo. 509, 12 S. W. 652. In the Howard case a child about four years old fell through an elevator opening and was killed. The suit was by the parents. The trial court instructed that it was the duty of the parents to guard and look after the child in proportion to the danger of his surroundings, he being of tender years, and that if the parents *or either of them* failed to do so and such failure contributed *in the least degree* to cause the accident the plaintiffs could not recover. This court first condemned the instruction because of the language ''contributed in the least degree.'' Speaking of the charge as to the duty of both parents the court said the circumstances

presented a difficult case in which to apply the doctrine of contributory negligence; that the circumscribed area in which the child and his parents were confined and the closeness of the child to the door opening were such that a mere step may have caused his fall; that under the circumstances to say that unless both parents were guarding the child there could be no recovery was putting upon the parents too great a burden of care. The court said:

"If both parents were negligent in performing the duty of guarding the child, then no recovery should be had; but one parent at a time ought to be all the guard a four year old child needs in order to ride safely in a passenger elevator."

It is apparent that said case does not sustain appellants' contention. In the instant case Instruction F required a finding that both parents were negligent.

Winters v. K. C. Cable Co., supra, is clearly distinguishable. The facts and issues there presented are too dissimilar from the case before us to make that case authority for appellants' contention.

As to b, we do not agree with appellants that there was no evidence to justify submission of contributory negligence on the part of the parents. Eugene was only eleven years old. The parents knew the traffic conditions and surroundings on Campbell Avenue, its extensive use by automobiles by night as well as by day, knew that in Eugene's journey to the theater he would travel over that street, part of the way alone, and would likely walk on the pavement, as most people did, since there were no sidewalks and the ground on either side of the pavement was rough. It was nighttime. Knowing these things they permitted him to go. He was struck while so traveling along on that street, as his parents knew in advance he intended to do.

In Payne v. Chicago & Alton Railroad Co., 129 Mo. 405, 31 S. W. 885, it is held, 129 Mo. l. c. 416, that it cannot be said, as a matter of law, in all cases and under all circumstances, that an eleven year old boy, having ordinary intelligence, has or has not the judgment and discretion which would charge one of maturer years with contributory negligence; that each case must be judged with respect to the particular child and the circumstances attending the injury; that if there is no doubt of the child's capacity to know and avoid the danger it would be the court's duty to decide, as matter of law, whether the capacity was wanting or existed but if there is doubt the jury should decide whether, considering the age and understanding of the child, the injury might have been avoided by the exercise of the care and discretion to be reasonably expected of such child.

That was an action brought by the child for his own injury. We refer to it as showing that the law does not regard an eleven year old child as possessed of the judgment and discretion and ability to look out for his own safety that an adult person is presumed to have.

The same thought is expressed in Roland v. Anderson (Mo. App.), 282 S. W. 752, wherein the court says that a boy twelve years of age lacks the elements necessary to exercise the discretion, thoughtfulness and judgment presumed to be attributed to an ordinarily prudent adult person, and quotes from Mann v. M. K. & T. Ry. Co., 123 Mo. App. 486, 491, 100 S. W. 566 (a suit for personal injuries in behalf of a twelve year old boy), that "Thoughtlessness, impulsiveness, and indifference to all but patent and imminent dangers are natural traits of childhood and must be taken into account when we come to classify the conduct of a child."

If, then, a child is not capable of anticipating, appreciating and guarding against danger as would be a person of more mature years, judgment and experience, it would seem by parity of reasoning that those having custody of and authority over such child and whose duty it is to care for and safeguard him should, so far as reasonably possible, prevent him from going into a danger known to them but which, because of his immaturity, he may not fully know and appreciate. In this case the evidence does not disclose that Eugene was other than a normal boy of eleven years, with the judgment and discretion to be expected in a boy of that age.

VI. Appellants complain of the refusal of their Instruction No. 4. The first part of that instruction stated merely an abstract proposition of law as to the duty of persons operating motor vehicles. The trial court will not be convicted of error for refusing an instruction which states merely an abstract legal proposition. [State ex rel. State Highway Commission v. Hartman, 226 Mo. App. 604, 44 S. W. (2d) 169.] The latter part of said Instruction No. 4 defined "highest degree of care." That was covered, and in the same language, by plaintiffs' given Instruction No. 5. Said Instruction No. 4 was properly refused.

VII. Lastly, prejudicial error is charged in that defendant, in the courtroom, during an intermission of court, conversed with two of the jurors. Affidavits of plaintiff Clarence Gardner and one of plaintiffs' attorneys were filed in support of this complaint, which first appeared in the motion for new trial. Gardner's affidavit says the conversation lasted fifteen minutes. Both of said affiants stated that they witnessed the occurrence. Those affidavits are silent as to the subject of the conversation or as to any complaint having been made to the court at the time, nor was there any showing otherwise made by plaintiffs as to the subject of said conversation. There is no showing anywhere in the record that said episode was observed by the court or called to its attention, and no exceptions are shown to have been taken to any action or nonaction of the court at the time. Defendant filed counter-affidavits of himself and both the

named jurors, to the effect that the conversation lasted but three or four minutes, was concerning the Boy Scout band which was then practicing on an upper floor of the court house, and that there was no mention of the case on trial or anything pertaining thereto.

The conversation having been explained to the satisfaction of the court, Boyle v. Bunting Hardware Co. (Mo. App.), 238 S. W. 155, and there appearing to have been nothing in the nature of a corrupt act or act pointing to turpitude, said episode would not be ground for setting aside the verdict. [Feary v. Met. St. Ry. Co., 162 Mo. 75, 107, 62 S. W. 452.] But for another reason appellants cannot now be heard to complain. They and their counsel knew of the occurrence at the time. They failed to call the court's attention thereto or to then ask redress, apparently choosing to remain silent and await the outcome of the trial. They cannot now successfully urge that they were prejudiced. [State v. Trainer, 336 Mo. 620, 80 S. W. (2d) 131, and cases therein cited.]

We have considered all the points made in appellants' brief and find no prejudicial error. Respondent, in connection with his brief on the merits, presents a motion to dismiss the appeal for alleged noncompliance with our rules. We think the motion not well grounded and it is overruled, but since we are affirming the case on the merits it is needless to discuss the reasons for denying the motion. The judgment of the circuit court is affirmed. *Westhues, C.,* concurs; *Bohling, C.,* absent.

PER CURIAM:—The foregoing opinion by COOLEY, C., is adopted as the opinion of the court. All the judges concur.