Herbert HEUER and Ervin Heuer,
Plaintiffs-Appellants,

v.

J. E. ULMER, Defendant-Appellant.

Nos. 7258, 7259.

Springfield Court of Appeals.

Missouri.

July 19, 1955.

J. Grant Frye, Cape Girardeau, for plaintiffs-appellants.

Stephen Barton and Thomas L. Arnold, Benton, for defendant-appellant.

RUARK, Judge.

Plaintiffs sued the defendant in two counts for promissory note and account. Defendant filed answer and counterclaim. The jury found in favor of defendant on both counts of the petition and in favor of plaintiffs on the counterclaim. Both parties appealed and the case went to the Supreme Court after joint motion of the parties asserting jurisdiction there. Heuer v. Ulmer, Mo.App., 264 S.W.2d 895. However, the Supreme Court held that the appeal on the counterclaim did not present a live issue (not apparent until shown by statements made in the briefs) and retransferred the case because the matters remaining in issue were within the jurisdiction of this court. Heuer v. Ulmer, Mo., 273 S.W.2d 169. Consequently we must affirm the judgment on the counterclaim and address ourselves only to the plaintiffs' appeal.

The first count of plaintiffs' petition pleaded a note for $2,756.33 plus interest and attorney fees and the second declared upon an open account for implement parts and services rendered in amount of $271.-36. Defendant answered Count I by stating that the note was given for the balance of the purchase price of a combine; that plaintiffs were dealers in farm equipment at Cape Girardeau; that defendant informed plaintiffs he wished to purchase a machine with which to do custom work in the combining of beans and wheat in Southeast Missouri; that plaintiffs, having such information, sold him the machine to be used for such purpose, "and plaintiffs then and there warranted the same to be *in all respects* fit and proper for such use"; that defendant relied upon such warranty, but when he sought to use the machine it proved wholly worthless for such purpose and of no value and the consideration for the note

had failed. As to Count II defendant alleged that the parts and services were furnished by plaintiffs in an effort to make their warranty good and that it was not intended at such time that the defendant be charged therefor. There was no motion for directed verdict on the petition by the plaintiffs and no question of written contract limiting warranties was raised.

The evidence showed that about October 4, 1951, defendant purchased from the plaintiffs a self-propelled combine, paying in cash and trade-in the sum of $2,258, and concurrently executing a combination note (here sued on) and chattel mortgage for the balance, due and payable one year thereafter. Defendant immediately put such machine in operation combining beans and used it through the fall season of 1951, the small grains season of 1952 and until sometime in the fall of 1952. The machine was repossessed, apparently at the request of defendant, in November 1952 but had not been sold in foreclosure.

According to the defendant, he went to plaintiffs seeking to purchase a machine with which to do custom combining. The plaintiffs offered to, and did, sell him a new model machine which was not then in stock but which was delivered shortly afterwards. There was no written warranty and the testimony was in substance that plaintiffs told the defendant the machine "would perform doing custom combining in that area," that "it would do the job," that "it would stand up and perform and do custom combining work." Defendant's evidence was that the machine was, from the outset, beset by frequently recurring breakdowns. Almost every part and every function failed. It did not perform as efficiently as did comparable machines working in the same neighborhood, and defendant, by reason of the numerous breakdowns, was unable to fulfill and complete his contracts with a considerable number of growers. The defendant introduced evidence that the persons who operated the machine for him were careful and competent operators.

On the other hand, there was evidence produced by the plaintiffs that at least some of the failures of the machine were due to the incompetence of one of the operators, who was nineteen years of age and who insisted upon running the machine too fast and caused it to "gum up"; that the machine was worked in the mud and became mired and upon one known occasion the operator had permitted mud in large quantities to be carried into the machine and accumulate in the straw walker so that it could not function properly; that when the machine was brought into plaintiffs' place of business and overhauled both oil and water were below the danger mark; that the engine showed signs of overheating; and that the cutting platform had been injured by having been run into an obstruction and was so bent as to interfere with operation of the sickle bar. There was also some evidence (secured through cross-examination of defendant's witnesses) that upon some occasions when the machine failed to perform the crop was burdened with large partly green jimson weeds or was heavy with grass, and at another time defendant was attempting to combine beans which had been weighted down by snow and were lying flat on the ground.

Plaintiffs-appellants' assignments I and II are based upon the contention that defendant's evidence was insufficient to constitute a defense. They argue that the testimony of defendant and his witnesses as to defects in the machine was too general to convey anything but conclusions, i. e., "the motor had no power," "everything was wrong with it from one end to the other," and so forth. It is true that defendant's evidence contained some general statements, but it also set forth in detail and at great length, requiring more than fifty pages of transcript, various items and various parts and functions which failed. This court is not sufficiently expert in mechanics to explain all of the operations involved and we feel that any such attempt on our part would leave the subject, as it was claimed concerning the combine, with "the riddle stopped up and beans running over." However, some of the items and instances detailed by defendant and his witnesses are: The first day four belts burned out and the

unloading auger locked; the wheel come off; called in another machine to do the combining when ours was broke down; more wheel trouble and vertical pulley trouble; the throat was not taking the beans up to the cylinders; the transmission fell out and all came out of it and tore up; when you put tension on the vertical pulley, tension would come on the spring and it would shear the bolts off; broke an enormous amount of bolts and cogs that pull the reel; some of the breakdowns due to the pull of the machine; those chains were continually dropping and jumping off, and pushed a cog off; trouble with wheel breakdowns; had repairs done at garages, machine.shops and welding shops; still having trouble with the auger; the header wouldn't lift or lower; the end of the auger broke off; about the time we got one piece fixed another would break; beaters and screens such it was leaving beans in the field; motor wouldn't pull the machine and. operate across the field with power enough to make it perform; at times pushed the beans off the platform into the compartment; cutting platform gave trouble; the thing the sickle runs through was not arched so the sickle wouldn't run without cutting the blades and guards; the reel didn't work; broke the cog wheel and the idler on it; slip clutches gave trouble; trouble with the sprocket; burned out belts; wheels rimmed out too large for the hub; cutting blade would lock up and choke in grass; levers that raised and lowered wouldn't function properly, etc. According to defendant's evidence the machine was broken down in some one or more of its functions ninety per cent of the time during combining season.

■ Plaintiffs-appellants make several suggestions in support of these assignments based on evidence which came from the plaintiffs and was contrary to the testimony of defendant. Determination of credibility and weight of evidence was for the trier of the fact. In passing upon the question of whether there was substantial evidence to support the verdict of a jury we must accept all evidence favorable to the appellee as true and give it the benefit of all favorable inferences. We disregard all of the evidence of the appellant except that which is favorable to the appellee. When we do this we have exhausted our function, and the fact that, had we been trier of the fact, our decision might have been otherwise is immaterial. Machens v. Machens, Mo., 263 S.W.2d 724, 734, with .Digest numbers listed; Bray v. St. Louis-San Francisco Ry. Co., Mo.App., 259 S.W.2d 132, 139, and cases cited.

■ But plaintiffs argue that the evidence left in equipoise the question whether the faulty functioning of the machine was due to careless handling and adverse natural conditions or whether it was due to defects in the machine itself. To this proposition are cited Wills v. Berberich's Delivery Co., 345 Mo. 616, 134 S.W.2d 125, 131, and Davidson v. Missouri Orpheum Corp., 236 Mo.App. 1025, 161 S.W.2d 707. The statement in the Berberich case, 134 S.W.2d loc. cit. 131, is:

"When there is *no substantial evidence* (italics here ours) tending to show the accident resulted from a cause for which the defendant is liable, *as against* some other cause shown in evidence for which he is not liable, the jury undoubtedly is left to speculation and conjecture. Even when the evidence is in equipoise *as between plaintiff and defendant,* the plaintiff has no right to recover, McCloskey v. Koplar, 329 Mo. 527, 541, 46 S.W.2d 557, 563, 92 A.L.R. 641, though in that situation the case is submitted to the jury and the question is covered by instructions, as for instance see Gardner v. Turk, 343 Mo. 899, 123 S.W.2d 158, 163. But if the plaintiff's own showing puts the evidence in equipoise as to whether or not the accident resulted from a cause for which the defendant is responsible, plaintiff has not made a prima facie case."

In that case there was a question. whether an infection was caused or aggravated by a fall, and it was held the fact some of the doctors testified that the infection. *more probably* resulted from the fall made a submissible case.

Davidson v. Missouri Orpheum Corp. quoted the Berberich case in refusing to find error in sustaining a motion for new trial in a suit where the plaintiff was unable to show what caused her to fall. The court said, 161 S.W.2d loc. cit. 710, that an inference of negligence could not be drawn from evidence which rested on conjecture or speculation.

An examination of the fluctuating application of the principle in the cases cited by Wills v. Berberich and the use made of it by the cases which cite and distinguish such case, see Wise v. Standard Oil Co. of Ind., Mo.App., 198 S.W.2d 1014; State ex rel. Rosenbalm v. Shain, 349 Mo. 27, 159 S.W.2d 582, and the language used by the court in Riley v. St. Louis Pub. Service Co., Mo. App., 245 S.W.2d 666, loc. cit. 670, convinces us that, except for instances where the plaintiff has made damaging admissions, or reliance is had upon inference in order to make a submissible case, the rule is of more practical value to the trier of the fact than it is to an appellate court, which is concerned only with the question of whether there is substantial evidence to support the verdict. In the case before us there was considerable evidence that various parts of the combine were deficient, or that their combination together rendered the whole machine partially inoperable. We will not *infer* that incompetent handling (a disputed fact) or occasional abnormal operating conditions were the whole cause of the failure of the machine, and from this say there was no substantial evidence that the machine was defective in breach of warranty. We hold against plaintiffs-appellants on this assignment in respect to Count I. We will consider the question further in respect to Count II later herein.

 . The next assignment of plaintiffs is that the verdicts on the petition and counterclaim are inconsistent and therefore self-destroying because they are based on the same facts. The counterclaim was for damages because of moneys allegedly expended in repairs and for loss of profits because of inability to fulfill contracts for combining. We think the verdicts are not necessarily inconsistent. When breach of warranty is asserted as a defense it goes hand in hand with the defense of failure of consideration. A purchaser, after discovering defects in an article sold on warranty, express or implied, may retain the article and defeat recovery on the purchase price to the extent of the difference between the value as warranted and its real value. 78 C.J.S., Sales, § 486, p. 154; Cantrell v. Burgess, Mo.App., 141 S.W.2d 200, 205; Battreal Shoe Co. v. McKinney, Mo.App., 189 S.W. 595, 596; Acme Harvesting Mach. Co. v. Gasperson, 168 Mo.App. 558, 153 S.W. 1069; Ferguson Implement Co. v. Parmer, 128 Mo.App. 300, 107 S.W. 469. Here defendant had paid in cash and trade a substantial sum. The jury may well have believed (and evidently did believe) that the amount so paid was all the machine was worth when it was delivered to the defendant and so refused to award plaintiffs any further sum. As to the counterclaim, the jury may not have believed defendant's evidence in respect to his losses or expenses (and indeed it was not clear and definite), or it may have believed that his management of his affairs, or even inefficient operation of the combine, contributed, along with the partial unfitness of the machine itself, to his alleged failure to make a profit.

The remainder of plaintiffs' assignments deal with objections to defendant's instructions A, B and C. Instruction C submitted the counterclaim and, as stated, is not now for our consideration. Instruction A submitted defendant's defense to Count I and instruction B his defense as to Count II. Inasmuch as they are identical in respect to the matters here discussed, we will consider only instruction A, which told the jury that if plaintiffs sold defendant the combine to be used in doing custom combining, "and then and there warranted said combine to be in all respects fit and proper for such use, and that defendant, J. E. Ulmer, relied upon said warranty and purchased said combine for the purpose of doing custom work in combining beans and wheat in the Southeast Missouri area, and paid plaintiffs $2,258 in cash and equipment

and executed the note sued on in Count I of plaintiffs' petition for the balance of the purchase price, and if you further find that said combine was unfit and worthless for the purpose for which it was sold and that such defects were not apparent from outward inspection, then you will find the actual value of said combine, if you find it had any value, and if the actual value of said combine, if you find it had any value, does not exceed the sum of $2,258, your verdict will be for the defendant. * * * "

We think the instruction was improper under the circumstances in this case in injecting the suggestion that plaintiffs warranted the machine to be fit and proper *in all respects* and in coupling with it the idea the machine was wholly worthless. The evidence did not show a warranty that the machine was in all respects fit but simply that it would stand up and perform doing custom work. The plaintiffs did not warrant perfection. The language in evidence expressed a warranty which was about what would otherwise have been implied. If the submission was, as respondent contends, on an implied warranty,[1] it was inaccurate, for the implied warranty is that the machine is reasonably suitable and adapted to the purpose for which it was purchased; or, to put it another way, is reasonably fit to perform the work for which it was purchased.[2] It does not guarantee that the article shall be perfect, or fit in every respect,[3] nor that the machine is the equal of other machines doing the same work.[4] And it carries with it the assumption that the usage will be under reasonable and usual conditions.[5] The words used in the instructions might in a great many instances be entirely harmless and considered only as the assumption of additional burden, but here there was considerable evidence concerning the ability of the machine to perform in heavy weeds and grass, in mud and under other conditions, and disparity of performance as compared with other machines. The jury should not have been submitted the idea that the machine was to be expected to perform efficiently under abnormal conditions.

However, the appellants are not in a position to complain of the instructions, because in their own instructions, which were evidently submitted after defendant had offered his, they adopted and approved defendant's submission of the matters complained of. Plaintiffs' instructions D and E submitted their note and account and both concluded with a direction to find in favor of the plaintiffs *"unless you find the facts set out in instructions A, B and C."* A party cannot complain of error in his opponent's instruction when he by reference to it indicates approval and thereby adopts the erroneous or misstated theory of submission. Ferguson v. Betterton, Mo., 270 S.W.2d 756; Quinn v. Atchison, T. & S. F. Ry. Co., Mo.App., 193 S.W. 933, 934; Consolidated School Dist. No. 3 of Grain Valley v. West Missouri Power Co., 329 Mo. 690, 46 S.W.2d 174, 181, and cases cited.

Returning to Count II of the petition, the account sued upon represented charges

1. For absorption of implied warranty by express warranty, see Hunt v. Sanders, 313 Mo. 169, 281 S.W. 422, and cases cited; Alvin Fruit & Truck Ass'n v. Hartman, 146 Mo.App. 155, 123 S.W. 957, 961; National Cash Register Co. v. Layton, 207 Mo.App. 454, 232 S.W. 1091; See also, 77 C.J.S., Sales, § 316 (c), p. 1163; 164 A.L.R., pp. 1326, 1329, Annotation, and 1332.

2. 77 C.J.S., Sales, § 330(1), p. 1192; Sales, 46 Am.Jur., sec. 346, p. 529, sec. 350, p. 535; Aultman, Miller & Co. v. Hunter, 82 Mo.App. 632; Davies v. Motor Radio Co., Inc., Mo.App., 236 S.W.2d 409, supra; Ferguson Implement Co. v. Parmer, 128 Mo.App. 300, 107 S.W. 469, supra; Hunter v. Waterloo Gasoline Engine Co., Mo., 260 S.W. 970.

3. Lake Superior Loader Co. v. Huttig Lead & Zinc Co., 305 Mo. 130, 264 S.W. 396.

4. Sales, 46 Am.Jur., sec. 350, p. 535.

5. 77 C.J.S., Sales, § 330(2), p. 1194; Metropolitan St. Ry. Co. v. Broderick & Bascom Rope Co., 156 Mo.App. 640, 137 S.W. 633, 635.

made during the months of August, September and October of 1952. The largest item was that of $199.04 for overhauling. The balance represented purchases, some of which were obviously for parts for the combine but some of which may or may not have been. Plaintiffs proved value quantum meruit. Defendant did not agree or disagree as to value. He admitted that he had received certain of the items but did not admit, nor did he deny, receipt of others. As to the overhauling, defendant testified that in September 1952, after he had made complaints concerning the machine, the plaintiffs took it into their shop and kept it for eight days while they worked on it, returning it to defendant on the 1st day of October. He stated that he returned it to work combining beans but that his breakdown trouble soon recurred and that he finally told plaintiffs to take the machine, that he wasn't going to pay for it. Plaintiffs took possession on November 10 or 12. Previous to the overhauling and in both 1951 and 1952 defendant had made purchases from plaintiffs, some of which he paid for in cash and some of which were on credit. The account sued on shows a credit of $41.36 for some item which had been purchased previously and which was returned during the period covered by the account.

■■■■■■ At the time these charges were made defendant had used, or at least partially used, the machine for approximately a year, through one small grain season, one bean season and was engaged upon a second bean season. Under the theory upon which defendant defended the case he was entitled to credit for the difference in the value of the machine as warranted and its actual value *at the time he got it*. Absent agreement further and in addition to the original warranty shown by the evidence in this case, the plaintiffs would not be required to supply him with parts and services free of charge thereafter. The defendant testified as to one of the items, a charge of $56.32 in reference to a vertical pulley, that plaintiffs agreed to furnish it without charge. As to the overhaul job, he testified that plaintiffs said they would make the machine perform, but he did not say that they agreed to do it free of charges, and we cannot say that such statement, standing alone, involved any more obligation upon the plaintiffs than a similar statement made by any garage man to any person with an ailing automobile. As to the other items of charge there was no evidence from which the jury could have found an agreement they were not to be paid for. We think there was not sufficient evidence sustaining the affirmative defense to justify the jury in returning a verdict in favor of the defendant and against the plaintiffs for the whole amount in contest under Count II. The evidence in respect to this count was somewhat deficient on both sides, due no doubt to the fact that the attention of both parties was centered upon the principal bone of contention, i. e., the question of liability for the purchase price of the combine. No doubt upon retrial the facts will be developed more fully.

We think the judgment must be affirmed in respect to Count I of plaintiffs' petition and in respect to defendant's counterclaim. The case is remanded for retrial on the second count of plaintiffs' petition, with directions that, when final judgment be entered, such be done in accordance with the views herein expressed.

McDOWELL, P. J., and STONE, J., concur.