ROBERT DOHERTY, an Infant, by JOHN D. DOHERTY, His Next Friend, Appellant, v. ST. LOUIS BUTTER COMPANY, a Corporation.—98 S. W. (2d) 742.

Division Two, November 17, 1936.*

*NOTE: Opinion filed at May Term, 1936, August 20, 1936; motion for rehearing filed; motion overruled at September Term, November 17, 1936.

*S. D. Flanagan* for appellant.

*Clark M. Clifford* for respondent.

1000

WESTHUES, C.—Robert Doherty, an infant, brought suit by his next friend, J. D. Doherty, against respondent, St. Louis Butter Company, to recover $25,000 in damages, for personal injuries sustained as the result of a collision between Robert Doherty and a truck driven by one of respondent's employees. Upon a trial a jury returned a verdict for the defendant, respondent here, and plaintiff appealed.

The incident giving rise to plaintiff's cause of action occurred at noon, on the 19th day of May, 1932, on Albin Avenue, St. Louis, Missouri, near the home of plaintiff. A man named Loellke, driving a Ford, had taken plaintiff, then seven years of age, and an older brother from school to their home. Loellke stopped his car, facing west, across the street from the boys' home and near the home of a family named Jellison. Plaintiff lived on the south side of the street and the Jellison family on the north. Plaintiff and his brother alighted from the car on the right hand side to the north. Plaintiff dropped some marbles and after the boys had picked them up they started across the street to their home, when plaintiff came in contact with the truck of respondents, which was traveling east.

Plaintiff's case was submitted to a jury solely on the humanitarian doctrine. The evidence introduced by plaintiff, as testified to mostly by the two Doherty boys, was about as follows: Plaintiff dropped his marbles as he was getting out of the car, and he and his brother stopped to pick them up, while the car proceeded on its way. At this time the truck with which plaintiff collided was about one hundred and fifty feet from the place where plaintiff was struck. After plaintiff picked up the marbles he started across the street and was struck by the part of the truck between the headlight and the front fender. Evidence was also introduced that the truck was traveling between twenty and twenty-five miles per hour; that no warning signals were given and that the truck did not swerve to either side.

Both boys had seen the truck a distance down the street. We need not relate the injuries sustained because they are not in issue upon this appeal. We are of the opinion that plaintiff made a case under the humanitarian doctrine.

The only complaints made in the brief here pertain to the instructions given, by the court, on defendant's behalf, and to the admission of evidence. A number of the points briefed are that certain instructions were not justified by the evidence. We must, therefore, make a statement of the evidence as offered by respondent.

Earl Sutton, the driver of the truck, testified in part as follows, as abstracted by appellant:

"When I reached the top of the hill I saw a Ford roadster coming west on Albin, and I was traveling at around twelve miles per hour, going east, and when I got within about fifteen or twenty feet this Ford came to a stop and I noticed two young boys get out of the Ford on the right side, facing west. When I seen the Ford car come to a stop and saw these boys getting out, I had a magneto on my Ford because it is not equipped with a battery, and I pressed the button with my horn, which gave a sound. As I got even with the Ford truck the man that owned the Ford truck pulled west, and I was going east, and I heard a thump against my Ford, and when I did I jammed my emergency brake and my foot brake at the same time and I stopped within a distance of about five feet, and I got out of the truck and walked around the truck and I saw a boy, a small child, laying within three or four feet distant in back of the left rear wheel, and I picked him up and took him to his mother, which I was guided in my his older brother. . . ."

On cross-examination he testified:

"I sounded my horn when I was ten feet ahead of him, going towards him—ten feet west of him. I just sounded it the one time. I did not realize when I saw the children getting out of the automobile that they might run from behind that parked car, because they got out and both stood there together. They stood right where they got out and at that time my car was around a distance of eight or ten feet. I noticed then when I blew my horn. I have been driving a truck for seven years up to the present time. I passed along that street weekly, but never saw these children there before. I realized that these children were apt to come around the back of the automobile, but I blew my horn and I thought that they heard it. I didn't blow it a second time and I didn't turn my head to the left or right as I passed the rear of that car because I could see both sides of the road."

Mrs. Ralph Jellison testified as follows:

"Between the hours of 12 and 1 o'clock on that day, I was out on the porch, adjusting the lamp shade. Mr. Loellke's car drove up,

and this child, I don't know which one, got out first, but they got out right in front of our drive and I looked up and glanced the other way. I saw this St. Louis Butter Company machine at the other side of our 50-foot lot. I did not pay any attention to it then; and I heard Jim holler, 'Oh, Bob!' It attracted my attention and when I looked up, it looked like the child was caught in the rear wheel of the truck and it seemed like the truck went about five foot, and the child seemed like he tried to get up to it and stopped, and he fell down there on his knees again, and tried to crawl on the inside towards his home, towards the right side of the machine. He was tangled with the left rear wheel. The cry first attracted my attention. I first noticed this truck going east. Mr. Loellke's car was facing west when it stopped. The truck was going at a medium rate of speed. From the time I first saw the child tangled up in the rear wheel of the truck, the truck went about five feet before it stopped. I do not know Earl Sutton, the driver of the truck.''

Mr. A. J. Jellison testified:

''The concrete on Albin avenue is just about seventeen feet wide. Mr. Loellke stopped his car on the north edge of the concrete, with all four wheels on the concrete. He covered about half the street. The St. Louis Butter Company truck was coming east at about fifteen miles an hour. This Ford roadster stopped and the little boys got out. I think the oldest little fellow got out first, little Jimmie, then little Bobbie got out, and he hesitated when he got out, as if he was picking something up, and when he picked it up, he started and run right around this roadster, and I saw him. He could not stop himself and the other little boy hollered as loud as he could for him to stop, but the little fellow was just too far gone. He hit the butter truck right about where the fender starts over the rear wheel on the north side of the butter truck; and he got tangled up in the wheel. The fellow stopped the truck right now. . . .''

The Jellisons also testified that they did not hear a warning given by the driver of the truck.

■ The trial court gave six instructions, at respondent's request, and appellant has assailed each of them. Instruction No. 3 read as follows:

'' 'The court instructs the jury that the charge laid by the plaintiff against the defendant in this case is one of negligence. Recovery may not be had on a charge of negligence except when such charge is sustained by the preponderance, that is, the greater weight of the credible evidence, to the reasonable satisfaction of the jury.

'' 'It does not devolve upon the defendant to disprove said charge, but rather the law casts the burden of proof in reference to said charge upon the plaintiff and said charge of negligence must be sustained by the preponderance, that is, the greater weight of the credible evidence, to the satisfaction of the jury.

· " 'If, therefore, you find the evidence touching the charge of negligence against the defendant does not preponderate in favor of the plaintiff, or is evenly balanced, then and in that case plaintiff is not entitled to recover against the defendant and you will find your verdict for the defendant.' Given."

Appellant cited the cases of Koebel v. Tieman Coal & Material Co., 337 Mo. 561, 85 S. W. (2d) 519; Payne v. Reed, 332 Mo. 343, 59 S. W. (2d) 43, and other cases in support of his contention that the above instruction placed upon plaintiff a greater burden than the law requires. This court has had much to say in recent cases with reference to instructions on the burden of proof. Many cases were referred to in the Koebel case, supra, such as the case of Sheehan v. Terminal Railroad Assn. of St. Louis, 336 Mo. 709, 81 S. W. (2d) 305, by the court en banc. A comparison of the instructions considered in those cases with the above quoted instruction will disclose that the instruction quoted omitted the parts condemned. Neither do we deem the instruction bad under the recent ruling in the case of Nelson v. Evans, 93 S. W. (2d) 691. We hold the instruction in this case to be in proper form. [Rath v. Knight, 55 S. W. (2d) 682, l. c. 684 (4-8).]

Instruction No. 4 in substance advised the jury that plaintiff charged that defendant saw, or by the exercise of due care could have seen, plaintiff in a position of peril in time to thereafter, by the exercise of due care, with the means and appliances at hand, have averted the collision. The instruction further read as follows:

" 'In reference to said charge, the Court instructs the jury that if you believe and find from the evidence that after plaintiff reached a position of peril of colliding with said automobile, if you so find, the driver of the same could not, by the exercise of due care, have prevented injury to plaintiff, then and in that case plaintiff is not entitled to recover and you will find your verdict for defendant.' Given."

Instructions Nos. 5 and 6 read:

" 'Instruction No. 5.

" 'The Court instructs the jury that even though you believe and find from the evidence that plaintiff and the automobile mentioned in the evidence collided on the occasion mentioned in the evidence, yet if you further believe and find from the evidence that from the time plaintiff reached a position of peril of colliding with said automobile until the collision between said automobile and plaintiff, the driver of said automobile was exercising due care in the operation of said automobile, then and in that case plaintiff is not entitled to recover and you will find your verdict for the defendant.' Given."

" 'Instruction No. 6.

" 'The Court instructs the jury that by the phrase 'due care," as used in these instructions with reference to the parties to this suit, is meant the highest degree of care which a very careful, prudent and skillful automobile operator would exercise under the same or similar circumstances.' Given."

It will be noted that by Instruction No. 6 the jury was told that "due care" meant the highest degree of care. The term "due care" has been held to be equivalent to ordinary care. [Wilson v. Chattin, 335 Mo. 375, 72 S. W. (2d) 1001.] Respondent in this case was required to exercise the highest degree of care. The instructions used the term "due care." By Instruction No. 6, however, the jury was instructed that "due care," as used in the instructions, meant the highest degree of care which a very careful, prudent and skillful automobile operator would exercise under the same or similar circumstances. The wording of the instruction applied specifically to the driver of the truck. The jury, therefore, could not have been misled by the term "due care," as appellant insists. If the jury, therefore, found the facts to be as contained in the instruction, plaintiff was not entitled to recover under the humanitarian doctrine and a verdict was justified for the defendant. Before authorizing a verdict the jury was required to find that the driver of the truck was free from negligence.

Instruction No. 7 read:

" 'The Court instructs the jury that if you believe and find from the evidence that on the occasion mentioned in the evidence plaintiff walked or ran against the side of the truck mentioned in the evidence near the left rear fender thereof, and if you further believe and find from the evidence that plaintiff's act in so walking or running against the side of the said truck, if you so find, was the sole cause of whatever injuries, if any, plaintiff sustained on said occasion, and was not due to any negligence on the part of the operator of the truck mentioned in the evidence in any particulars set out in other instructions herein, then and in that case plaintiff is not entitled to recover and you will find your verdict for the defendant.' Given.' "

Appellant has cited many cases in support of the contention that Instruction No. 7 was erroneous. The majority of those cases holds that where a plaintiff submits his case to a jury, solely on the humanitarian doctrine, contributory negligence passes out of the case and any instruction which injects contributory negligence into the case is erroneous. [Francis v. Mo. Pac. Transp. Co., 85 S. W. (2d) 915, l. c. 918 (7) (8); Millhouser v. Kansas City Public Service Co., 331 Mo. 933, 55 S. W. (2d) 673; Larey v. M. K. & T. Ry. Co., 333 Mo. 949, 64 S. W. (2d) 681.] The opinion in the Millhouser case, supra, comes

nearer sustaining appellant's theory than any of the cases cited. In the course of the opinion the court said:

"The only defense in a case properly submitted on the humanitarian rule is to disprove one or more of the basic facts on which that rule rests."

That is a rather broad statement. Certainly if the acts and conduct of a plaintiff were the sole cause of his injuries and the defendant was not negligent, then a verdict for the defendant is authorized. Should a defendant, under the humanitarian rule, be restricted to disprove one or more of the facts upon which that rule rests? Or may he affirmatively show a state of facts which, if true, would place the entire blame for the injury upon the plaintiff, and *by an appropraite instruction submit that question to the jury?* We think the latter rule correct, otherwise the lawsuit would be similar to compelling a man to enter a boxing contest and by the rules restrict him to dodging the other fellow's blows. By Instruction 7 the defendant merely presented for consideration of the jury the facts relied upon for its defense. If the facts were, as presented by the defendant, plaintiff was not entitled to recover under the humanitarian doctrine. The plaintiff in this case, as is generally done, enumerated in his main instruction the facts upon which he sought a favorable verdict. Must a defendant content himself by merely submitting negative instructions such as instructions Nos. 4 and 5? We think not. In a recent case, Borgstede v. Waldbauer et al., 337 Mo. 1205, 1216, 88 S. W. (2d) 373, l. c. 378 (14, 15), the court en banc said:

"Contributory negligence passes out of the case when it is submitted solely under the humanitarian doctrine. . . . However, the question of whether the negligence of the injured party, where it is made an issue in the case, was the sole cause of the injury remains in the case."

The court held that a defendant had a right to submit its defense in appropriate instructions, setting forth the facts relied upon. [See, also, Parker v. St. Louis-S. F. Ry. Co., 41 S. W. (2d) 386, l. c. 388 (5).] Such instructions, however, must be specific and not leave room for the jury to consider contributory negligence as a defense. The instruction in this case was plain. It authorized a verdict only if the jury found that plaintiff walked into the side of the truck and that such act was the sole cause of the injury. The instruction also required the jury to find that the injury was not caused by any negligence on the part of the truck driver. In the Millhouser case, supra, the condemned instruction was general in character. It did not set forth the facts relied upon for a verdict. The case, therefore, is not parallel to the case under consideration. We hold the instruction in the instant case proper.

Instruction 8, complained of, in substance informed the jury

that if they found from the evidence that plaintiff walked, or ran against the left rear side of the truck, and if the jury further found that when the plaintiff first came in a position of peril of so colliding with the truck, defendant did not see plaintiff in said position of peril and could not by the exercise of due care have seen him in such position, then the jury should return a verdict for defendant. Appellant contends this instruction was erroneous because the driver of the truck admitted that he realized the plaintiff was in a position of danger and that he did not look to the left or right as he drove up to the point of collision. The evidence does not justify that assertion. The truck driver testified, that as he was driving down the street he could see both to the right and to the left.

Plaintiff's theory of the case was that the Loellke car had passed on and was out of the way prior to the collision. Loellke so testified. Plaintiff's version of the affair is in part as follows:

"I was just going around the back end of the car when I dropped my marbles. Before the truck hit me I did not see it. I just saw it when we was climbing out of the car. It was not coming around the curve just then, but I saw it through the trees. It had not come into Albin Avenue yet. I did not see the truck again until after I got hit. I was not in the street after I got hit. I was about ten feet behind the back of the truck and I was laying down."

The older boy, James, testified as follows:

"After we got out, Bobby dropped his marbles and we started to pick them up. Mr. Loellke started his car and went down the street. Bobby dropped his marbles about two feet from the side of Mr. Loellke's car. I saw the truck of the St. Louis Butter Company before Bobby got hit when it come around the corner, east corner of the street, and then after it got up a little ways. When I saw it come around the corner it was not quite to the grocery store on Albin Avenue. The corner is near the grocery store. Bobby had just dropped his marbles and he was starting to pick them up, and I looked down to the corner and I saw a truck coming through the vacant lot there. After we picked the marbles up Bobby started to cross the street. It was about two or three feet on the west side of me, and he got quite a little ways ahead of me, and he got about the middle of the street—and he started across, the truck was about a little over 150 feet from us in the middle of the Finney house, and when the truck went by I saw it blurred, and I tried to grab Bobby when he got hit. When the truck hit him it hit him between the truck center and the light there, and I threw up my hands and screamed, and the truck went on, and Bobby was wrapped around the wheel some way or another."

This evidence, of course, was in conflict with the evidence of the truck driver, quoted in the fore part of the opinion, and also in con-

flict with the evidence of two disinterested witnesses, Mr. and Mrs. Jellison. Mr. Jellison testified he saw plaintiff run around Loellke's car and against the rear wheel of defendant's truck. It was, therefore, a question for the jury to decide and the contention made, that there was no evidence upon which to base respondent's instructions, is without merit.

■ Appellant asserts the trial court erred in permitting witness Earl Sutton to testify that he was a married man and had two children. The record disclosed the following:

"Q. Are you a married man? A. Yes, sir.

"Q. Have you a family? A. Yes, sir.

"Q. You have two boys, I believe? A. A boy and a girl.

"MR. FLANAGAN: I object to that, and ask that it be stricken out, and the jury instructed to disregard it.

"THE COURT: I will overrule the objection.

"MR. FLANAGAN: Exception."

The questions asked were not misleading and the answers were responsive to the questions. Appellant waited until the answers were made and then made his objection. An objection, or a motion to strike out evidence, comes too late when not made at the first opportunity. The rule is well stated in 16 Corpus Juris, 874, section 2195, as follows:

"Where a question indicates that the response to it will be incompetent or inadmissible, an objection thereto, in order to be available, must be made before the answer is given, as it is too late to object thereafter, unless the answer is given before there is an opportunity to object; a party cannot sit by and allow a question to be answered and then object in case the answer does not suit him. But where incompetent testimony is given in answer to a question which does not necessarily or naturally call for it, an objection thereafter made to such testimony is in time." [See, also, State v. Cain (Mo.), 37 S. W. (2d) 416, l. c. 418.]

Finding no reversible error, the judgment is affirmed. *Cooley* and *Bohling, CC.*, concur.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court. All the judges concur.