## LARGO v. BONADONNA et al.

No. 43888.

Supreme Court of Missouri.
Division No. 1.

July 12, 1954.

Edwin Earnshaw, Kansas City, for appellant.

Paul C. Sprinkle, Sprinkle, Knowles & Carter, Kansas City, for respondents.

VAN OSDOL, Commissioner.

In this action plaintiff, Nunzio Largo, seeks recovery of $15,585 damages for personal injury and property damage alleged to have been sustained in the collision of plaintiff's automobile and the automobile belonging to defendant Dorothy Bonadonna and driven by her agent, defendant James P. Bonadonna. The collision occurred in the intersection at 19th Street and Troost Avenue in Kansas City at about 11:45 p. m., May 22, 1950. A jury returned a verdict for defendants, and plaintiff has appealed from the ensuing judgment.

Plaintiff's case was submitted to the jury on negligence under the humanitarian rule, and plaintiff's principal verdict-directing Instruction No. 1 hypothesized that plaintiff "was in a position of imminent peril in the intersection of 19th Street and Troost Avenue", and submitted defendants' negligence under the humanitarian rule specifically in failing to slaken the speed of their automobile or stop or swerve the same after defendants saw, or in the exercise of the highest degree of care should have seen, that plaintiff was in such position of imminent peril.

It is contended by plaintiff-appellant that the trial court erred in giving defendants' verdict-directing Instruction No. 9. Plaintiff-appellant says the instruction erroneously authorized a verdict for defendants on plaintiff's contributory negligence; that the instruction did not hypothesize the responsibility of defendants for their conduct after they, in the exercise of the highest degree of care, should have seen plaintiff was oblivious and in a position of imminent peril, but submitted the defendants' responsibility for failure to act under the humanitarian rule only at a time after they saw plaintiff was in imminent peril. They further contend the instruction is contrary to defendants' admission that they could have avoided the collision, is contrary to the physical facts, and is not supported by evidence.

Before we examine the instruction, we shall review the evidence introduced by the parties in order that the parties' factual theories may be understood.

19th Street in Kansas City, an east-west street, thirty-seven feet wide, intersects Troost Avenue, a north-south street, forty-one feet wide. The measurements are from curb to curb. The grade of Troost Avenue declines in approaching the intersection from the south. North and southbound streetcar tracks are on Troost Avenue at this point. The distance between the west rail of the (west) southbound track

to the east rail of the northbound track is approximately fifteen feet.

Plaintiff, Nunzio Largo, introduced evidence tending to show he was driving his two-door Ford coach, 1939 model, eastwardly on 19th Street. He was moving with the right side of his automobile three, four or five feet from the right (south) curb line. Street lights were burning at the intersection. There was a "stop" sign close to the south curb of 19th Street near the southwest corner of the intersection. Plaintiff stopped, and shifted back into first gear. He "looked up and down while it was still in first." He saw no automobile approaching the intersection. He moved into the intersection, and when he had come to the east rail of the first (southbound) set of tracks, "I put it in second." He had been moving slowly, five to seven miles per hour. He could have stopped within ten feet. At this time he looked again southwardly and saw defendants' automobile approaching one hundred fifty to two hundred feet south of the intersection. Defendants' car was moving about thirty miles per hour. Plaintiff increased speed to "maybe 12 miles", and was moving eastwardly at that rate of speed when the collision occurred. Plaintiff was ready to go over the "last track, then I got hit. * * * I thought he was going to turn with me, see."

Defendants introduced evidence tending to show that their Chevrolet Club Coupe, 1941 model, was being driven by defendant, James P. Bonadonna, northwardly downgrade toward 19th Street. The Chevrolet was "straddling" the east rail of the (east) northbound streetcar tracks. Defendant James testified that, when he was within "approximately" ten feet south of the south curb line of 19th Street, he for the first time looked to his left, and saw plaintiff's Ford. Plaintiff's vehicle was then west of Troost —approximately ten feet west of the stop sign. Defendant James said the stop sign was within five feet of the west curb of Troost. Plaintiff did not stop at the stop sign. Plaintiff was driving at a speed between forty and forty-five miles per hour, and did not slow down until the vehicles collided. Defendants' Chevrolet was then moving at about twenty miles per hour, and was slowed down to about ten miles per hour at the time of the collision. Plaintiff's automobile moved "about 40 feet anyway" from the time defendant James first saw it, and defendants' car traveled approximately "25 or 30 feet" in coming to the point of collision. At another time in his testimony defendant James said the front end of the Chevrolet was at the south curb line of 19th Street when he first saw plaintiff's car. At still another time in his testimony defendant James stated he had told investigating police officers that he "didn't see the danger of impact until 10 feet away." Relating to sight distances westwardly along 19th Street (when a motor vehicle is going northwardly on Troost and approaching 19th Street) defendant James testified as follows,

"Q. All right. By the way, how was the visibility on the southwest corner of the intersection? A. Visibility?

"Q. Yes. That is, as far as seeing— A. Well, there is, there is— there is a fence there. I don't know what kind of a fence you'd call it. It's about a 6 or 8-foot fence, and they have—I think they sell used trailers there, and you can't see too much around that corner.

"Q. Are there vehicles parked in there? A. There was that night, yes.

"Q. Does that interfere with visibility when you are driving north on Troost? A. Well, I'd say beyond 10 feet south of 19th Street you would have had visibility."

Defendant James further testified that plaintiff's car was "maybe 8 feet" east of the center line of Troost when the accident happened. Defendant James had turned the Chevrolet "a little bit", two or three feet, to the right when it was moving the last ten feet to the point of impact.

A passenger in defendants' Chevrolet testified that in approaching 19th Street the speed of the Chevrolet was slackened

to fifteen miles per hour; that the Chevrolet "kept slowing down"; and that the Chevrolet was going twelve miles per hour at the time of the collision.

Police officers, witnesses for plaintiff, testified of skid marks made by defendants' Chevrolet. These marks began four feet south of the south curb line of 19th Street and continued north to a point thirteen feet "out into the intersection." The Chevrolet came to rest approximately eighteen feet "north of the point where the skid marks stopped and was headed almost in an easterly direction." Skid marks of plaintiff's Ford started at a point about twenty-four feet east of the west curb of Troost and about thirteen feet north of the south curb line of 19th Street, and continued in a northeasterly direction for approximately twenty-six feet to the place where the Ford came to rest after the collision. The marks were "approximately together" at a point about twenty-four feet east of the west curb of Troost.

The right side of the Ford and the left front of the Chevrolet were damaged.

At defendants' request the trial court gave Instruction No. 9, as follows,

"The Court instructs the jury that there was no duty resting upon the defendants mentioned in evidence to have slackened the speed of their automobile, or to have stopped said automobile, or to have turned the same aside until it became apparent in the exercise of the highest degree of care on the part of said defendants that the plaintiff was in a position of peril on the street mentioned and described in evidence.

"So, therefore, if you find and believe from the evidence that the defendants automobile was being driven in a northerly direction on Troost Avenue, and that the plaintiff was driving his automobile in an easterly direction on 19th Street, and if you further find and believe from the evidence that when the front end of defendants automobile had reached the south curb line of 19th Street that the plaintiff's automobile was some 10 feet west of the west curb line of Troost Avenue, if you so find, and if you further find and believe from the evidence that at said time plaintiff was driving his automobile in excess of 35 miles per hour, if you so find, and that the defendants automobile was proceeding at a speed of from 10 to 15 miles per hour, if you so find, and if you further find and believe from the evidence that plaintiff's automobile was driven into the intersection past the stop sign for eastbound traffic on the west side of Troost Avenue, if you so find, directly into the course of the automobile driven by the defendants, if you so find, and if you further find and believe from the evidence that plaintiff drove his automobile as aforesaid in such close proximity to the defendants automobile that by the exercise of the highest degree of care on the part of the defendants that they were unable to slow up their automobile, stop the same, or turn aside in time thereafter to avoid a collision with the automobile driven by the plaintiff, then you are instructed that the plaintiff is not entitled to recover against the defendants and your verdict shall be in favor of the defendants."

The constitutive facts, or essential elements, or basic facts of a claim or cause of action under the humanitarian rule, stated in their simplest terms, are contained in this formula, " '(1) Plaintiff was in a position of peril; (2) defendant had notice thereof (if it was the duty of defendant to have been on the lookout, constructive notice suffices); (3) defendant after receiving such notice had the present ability, with the means at hand, to have averted the impending injury without injury to himself or others; (4) he failed to exercise ordinary care [the highest degree of care if operating a motor vehicle on a highway] to avert such impending injury; and (5) by reason thereof plaintiff was injured.' " Banks v. Morris & Co., 302 Mo. 254, at page 267, 257 S.W. 482, at page 484. And where a defendant's negligence under the humanitarian rule has been submitted, the defendant may either submit the exact converse of plaintiff's humanitarian rule submission, "or of any essential element thereof, or he can

submit facts (shown by his evidence) which would disprove one or more of the basic facts of plaintiff's humanitarian submission." Janssens v. Thompson, 360 Mo. 351, at page 362, 228 S.W.2d 743, at page 750; Doherty v. St. Louis Butter Co., 339 Mo. 996, 98 S.W.2d 742; Branson v. Abernathy Furniture Co., 344 Mo. 1171, 130 S.W.2d 562; Colvin v. Mills, 360 Mo. 1181, 232 S.W.2d 961; Silver v. Westlake, Mo.Sup., 248 S.W.2d 628. See also Welch v. McNeely, Mo., 269 S.W.2d 871, decided concurrently herewith by Division Number Two.

In this instant humanitarian rule case it is apparent upon a careful reading of defendants' verdict-directing instruction (No. 9), for the moment ignoring the imperfect, irrelevant and abstract introductory paragraph thereof, that defendants were taking the position that, after plaintiff was in a position of imminent peril as plaintiff had submitted in his verdict-directing Instruction No. 1, defendants did not have the then present ability to have averted the impending injury. Now as submitted in plaintiff's verdict-directing Instruction No. 1, plaintiff was in a position of imminent peril when he was "in the intersection of 19th Street and Troost Avenue." Defendants did not submit the exact converse of plaintiff's humanitarian rule submission, and defendants did not submit the exact converse of an essential element thereof [see essential element "(3)", Banks v. Morris & Co., supra]. Defendants, by their instruction (No. 9) apparently chose to submit facts which would disprove one of the basic facts [essential element (3), Banks v. Morris & Co., supra] of plaintiff's humanitarian rule submission. They were attempting to submit facts purportedly supported by their own evidence, which facts, if true, would necessarily refute and exclude the facts upon which plaintiff relied to sustain his humanitarian rule case.

Plaintiff had introduced evidence tending to show that he had stopped near the stop sign west of Troost; had moved slowly into the intersection in low gear to a point at the east rail of the southbound streetcar tracks on Troost; had there shifted into second gear and at the time observed defendants' car moving northwardly on Troost at a speed of thirty miles per hour and then being at a point one hundred fifty to two hundred feet south of the intersection; and had moved on eastwardly at a speed increased to about twelve miles per hour. Briefly, this evidence was that upon which plaintiff relied to support his case as submitted. It seems plaintiff had the theory that here, out in the intersection, plaintiff was in peril and defendants should have seen he was in imminent peril, and they, being then so far away, could and should, in the exercise of the highest degree of care, have stopped their vehicle or slackened its speed or swerved and averted the impending injury. We shall assume that plaintiff's evidence made out a case of humanitarian rule negligence submissible to a jury.

As has been said, defendants were not obliged to merely submit the exact converse of plaintiff's humanitarian rule submission, nor were they obliged to submit the exact converse of one or more of the essential elements thereof. They had their own factual theory of how the collision was brought about. They introduced substantial evidence which the jury apparently believed, that is, that plaintiff approached and passed into the intersection and to the point of the collision at a speed "in excess of 35 miles per hour" and at a time when defendants' vehicle was right down there close to or at the intersection moving ten to fifteen miles per hour. Indeed defendant James said plaintiff was moving forty to forty-five miles per hour. Such a speed (as submitted, "in excess of 35 miles per hour", that is, in excess of 51.33 feet per second) would take plaintiff across the zone—"in the intersection" to the point of impact—within which plaintiff had submitted was his position of peril, in less than a second. The instruction further submitted that plaintiff drove his automobile as aforesaid in such close proximity to the defendants' automobile that by the exercise of the highest degree of care defendants were unable to slow up their automobile, stop the same, or

turn aside in time thereafter to avoid a collision. This evidence and hypothesis of speed introduced and submitted by defendants as the rate of speed at which plaintiff moved into and across the intersection and to the point of the collision necessarily negatived the evidence of speeds and positions of the parties' vehicles upon which plaintiff relied to establish defendants' humanitarian negligence.

■ "Under the humanitarian rule 'the cause of the injured party's peril is immaterial (save, perhaps, when he voluntarily seeks injury * * *).' Grubbs v. Kansas City Public Service Co., 329 Mo. 390, 45 S.W.2d 71, 74; Freeman v. Berberich, 332 Mo. 831, 60 S.W.2d 393, and cases therein cited. The humanitarian rule exempts plaintiff from penalty for his own contributory negligence and correspondingly exempts defendant from liability for his antecedent or primary negligence. Zickefoose v. Thompson, 347 Mo. 579, 148 S.W.2d 784." Teague v. Plaza Express Co., 354 Mo. 582, 190 S.W.2d 254, 258. But regardless of whatever antecedent conduct or circumstance brings a plaintiff into a position of imminent peril if there is such a fleeting period of time thereafter (and prior to the impending injury) that a defendant in the exercise of the applicable standard of care cannot do anything about it, then it should be said an essential element [(3), Banks v. Morris & Co., supra] of a humanitarian rule case is missing. Branson v. Abernathy Furniture Co., supra; Johnston v. Ramming, 340 Mo. 311, 100 S.W.2d 466.

[Plaintiff-appellant · has urged the Instruction No. 9 is contrary to defendants' admission that the Chevrolet could have been swerved to the left and the collision thus avoided. Defendant James did state that he "might have missed" plaintiff had he (defendant James) turned the Chevrolet to the left. This statement was premised upon an hypothesis that plaintiff's Ford had passed eight feet further to the eastward than it had actually moved at the time of the collision. And we are unable to follow plaintiff's argument that the sub-mission in the instruction (No. 9) was in conflict with the shown physical facts, or that the location and extent of the skid marks described by the police officers destroyed the theory of defendants' defense.]

■ Now referring to the introductory paragraph of the instruction and to plaintiff-appellant's contention that "discoverable peril" was not negatived in the instruction—it is true that, had defendant James looked northwestwardly *sooner* than he said he did (and assuming that plaintiff was approaching the intersection at a high rate of speed), defendant might have seen or "discovered" plaintiff moving eastwardly at some point of greater 'distance than fifteen feet west of the west curb of Troost, and if it had been the theory of plaintiff's case that plaintiff was moving at a steady and rapid speed and was in a position of peril as he was approaching Troost Avenue from the west (and if plaintiff had made out a submissible case on that factual theory) then a defendants' verdict-directing instruction might have been prejudicially erroneous, as plaintiff-appellant contends, if it failed to exclude the element of "discoverable peril." Colvin v. Mills, supra. Such was not plaintiff's factual theory, however, and such was not plaintiff's submission.

Now, regardless of the faults in the drafting of Instruction No. 9, we are of the opinion that, inasmuch as the jury must have believed (since the instruction required the jury to believe in arriving at a verdict for defendants) a fact or facts which were basically irreconcilable with plaintiff's factual theory as plaintiff submitted, the instruction was not prejudicial to plaintiff because of its errors. Branson v. Abernathy Furniture Co., supra; Silver v. Westlake, supra. See also Rembusch v. Prebe, 358 Mo. 409, 215 S.W.2d 433. Although the instruction was erroneous and should not be used as a model in any case, we believe the verdict for defendants, in this case, could not have been due to the errors in the instruction. It would seem plaintiff merely failed to sustain his burden of jury persuasion.

The judgment should be affirmed.

It is so ordered.

LOZIER and COIL, CC., concur.

PER CURIAM.

The foregoing opinion by VAN OSDOL, C., is adopted as the opinion of the court.

All of the Judges concur.