Marilyn BUNCH, an Infant, by Elmer Loren Bunch, her Next Friend (Plaintiff), Appellant,

v.

Erwin MUELLER (Defendant), Respondent.

No. 29020.

St. Louis Court of Appeals.

Missouri.

April 19, 1955.

Motion for Rehearing or to Transfer to Supreme Court Denied May 13, 1955.

26

Lyng, MacLeod & Davidson, Russell N. MacLeod and F. Daley Abels, St. Louis, for appellant.

Jones, Hocker, Gladney & Grand, Harold C. Gaebe, Jr., St. Louis, and Harold B. Bamburg, St. Louis, for respondent.

WOLFE, Commissioner.

This is an action for damages arising out of personal injuries sustained by Marilyn Bunch, an infant. She was injured when she came into contact with defendant's automobile while she, as a pedestrian, was attempting to cross in front of it. There was a verdict and judgment for the defendant and the plaintiff prosecutes this appeal.

Marilyn Bunch was ten years of age. On September 19, 1952, she went on an errand to a drugstore to buy a newspaper for her mother. To get to the store she was obliged to cross Lafayette Avenue. At the place where she attemped to cross, Lafayette runs east and west and is intersected

by Tower Grove Avenue which runs north and south. Lafayette at this point is about 30 to 35 feet in width and Tower Grove is about 50 to 55 feet in width. There are stop signs on both streets.

The child crossed Lafayette from the northeast corner of the intersection and when she reached a short distance beyond the center line of the street she collided with the automobile of the defendant which was headed east. The defendant had been traveling eastwardly on Lafayette and had come to a stop on the west side of the intersection. As he crossed Tower Grove Avenue he was obliged to go at a slow rate of speed because there were two lanes of heavy northbound traffic. He again stopped near the center of Tower Grove to let a northbound car pass. As he started to clear the intersection and had traveled so that the front end of his car was about 8 feet past the crosswalk on Lafayette the accident occurred.

The plaintiff testified that before she crossed Lafayette she first looked to the left and then to the right and saw no automobiles coming so she started walking across the street. She said that when she got to the middle of the street she looked to her right again and saw no automobile coming so she continued on her way across and was struck by the defendant's car. She said she came into contact with the radiator of the car and that she threw up her hands and fell to the street. She said that the car came from her right and that after it hit her it stopped close enough to her so that she could touch it. She got up and the man in the car took her name and address and she then bought a newspaper and went home.

The defendant's version of the occurrence differed considerably from the testimony of the plaintiff. He said that he had been obliged, owing to the heavy traffic on Tower Grove Avenue, to just "inch" his way across. He was near the right-hand side of the center line of Lafayette Avenue as he cleared the intersection and he was required to travel in this part of the street because cars were parked to his right or along the south curb of Lafayette. There were also cars parked along the north curb and there was westbound traffic coming towards Tower Grove. He stated that after the last northbound car had passed in front of him there was nothing to obstruct his view of the north curb of Lafayette. When the front of his car was about 8 feet clear of the intersection, he saw the plaintiff for the first time near the center line of Lafayette apparently running diagonally across the street toward the path of his car. At that time he was going at a speed of from 5 to 8 miles an hour and he applied his brakes at once. His car was stopped almost immediately and the plaintiff ran into the left front fender of his automobile after it was stopped, but her momentum carried her forward and she fell down on both knees in front of his left headlight. He got out of his car immediately. The child got up and started down Lafayette Avenue before he could reach her. He called to her and she came back to him and gave him her name and address. She refused to let him take her home, saying that she did not want her mother to know about it. He noticed that her knees were apparently skinned and that she had a scab on her forehead of some previous mishap.

Two witnesses for the defendant were a husband and wife who were riding in their car west on Lafayette. They stated that there were cars parked on the north side of the street and that the automobile in which they were riding was being brought to a stop, in compliance with the stop sign at the intersection; when the wife noticed plaintiff on the north curb and directed her husband's attention to her. He stopped his car and the plaintiff put her head down and ran across the street. He said that the defendant's car stopped immediately and that the plaintiff threw out her hands against the hood of defendant's car and fell to a sitting position in front of it. These witnesses stated that there was nothing to obstruct the defendant's view of the north curb after the northbound traffic had passed in front of him.

After the plaintiff refused to allow the defendant to take her home he went to a nearby police station and reported the accident. At the suggestion of the police he went to her home where he talked to her parents and then drove the child to a hospital for examination. It was found that she had skinned knees and a bruise on her hip. There was evidence that about two weeks later her left foot bothered her but there is no point before us concerning the injuries.

As stated, there was a judgment for the defendant, and the plaintiff by this appeal raises but one point which is that the court erred in giving a certain instruction to the jury.

The plaintiff's case was submitted to the jury on the charge that the defendant negligently failed to stop or sound a warning after he saw or should have seen plaintiff in a position of imminent peril. The defendant offered and the court gave a "sole cause" instruction, which was as follows:

"The Court instructs the jury that if you find and believe from the evidence that the plaintiff, Marilyn Bunch, while crossing Lafayette Avenue near its intersection with Tower Grove Avenue from the north curb to the south curb of said Lafayette Avenue, looked only toward her left, that is to say, east on Lafayette Avenue, and that plaintiff failed to look to her right, if you so find, and in so failing she was negligent, and thereupon plaintiff suddenly and unexpectedly ran from the north curb of Lafayette Avenue toward and directly into the path of defendant's automobile, and that in so running she was negligent, and that such failure, if any, to look toward her right before plaintiff suddenly and unexpectedly ran into the path of defendant's automobile, if you so find, was the sole cause of the collision; and if you further find that when plaintiff came into a position of imminent peril of being struck by defendant's automobile, the automobile of defendant was then so close to plaintiff that in the exercise of the highest degree of care defendant could not have avoided the collision by stopping said automobile, or giving a signal or warning of his proximity and approach, if you so find, then and in that event you are instructed that the defendant was not guilty of any negligence, and your verdict should be in favor of defendant, Erwin Mueller."

The court also gave an instruction designated as Instruction No. 6, in which it stated:

"The Court instructs the Jury that Instruction No. 5 is what is known in law as a sole cause instruction and the Court instructs the jury that by the term 'sole cause' it meant acts or conduct which were the sole cause of the collision without any contributing negligence whatsoever on the part of the defendant as submitted in Instruction No. 1. Therefore, if you find that defendant was negligent as submitted in said Instruction No. 1, and thereby directly contributed in any degree whatever to cause the collision in question, then you cannot find for the defendant on the issue of sole cause referred to in said Instruction No. 5 and your finding on this issue must be in favor of the plaintiff."

It is first asserted that Instruction No. 5 erroneously failed to include a "not due" clause, meaning that it failed to require a finding that the collision was not due to the negligence of the defendant.

Such instructions, of course, are designed to inform the jury that if they find from the facts that the casualty, which is the subject of the action, was caused exclusively by the negligence of the plaintiff, plaintiff cannot recover. Since the plaintiff's contributing negligence cannot defeat the plaintiff in a humanitarian case, the "sole cause" instructions require a finding that there was no negligence on the part of the defendant contributing to the cause of the casualty. This is what the appellant refers to as the "not due" clause. Johnson

v. Cox, Mo.Sup., 262 S.W.2d 13; Janssens v. Thompson, 360 Mo. 351, 228 S.W.2d 743; Steffen v. Ritter, Mo.Sup., 214 S.W.2d 28; Doherty v. St. Louis Butter Co., 339 Mo. 996, 98 S.W.2d 742.

■ Although the phrase "not due to any negligence on the part of the defendant" was not used, the instruction does not appear to be wanting in the required negation as it predicates a verdict for the defendant upon a finding that the defendant could not have done the acts that he is charged with negligently failing to do after the plaintiff came into a position of imminent peril. In other words, the instruction requires the jury to find that the defendant was free from the negligence charged and this would necessarily embrace a finding that the occurrence was not due to his negligence. The instruction is not well phrased but it does not appear to be one that would misdirect or confuse the jury as to this point. This is particularly true in view of Instruction No. 6, which informed the jury of the meaning of the term "sole cause" and stated that if the defendant was negligent in any degree he was liable. Borgstede v. Waldbauer, 337 Mo. 1205, 88 S.W.2d 373; Steffen v. Ritter, supra; Doherty v. St. Louis Butter Co., supra.

■ The appellant also states that it was error to give any sole cause instruction because the facts do not justify such defense. The appellant is correct in asserting that there must be evidence to support the defense before a jury may be instructed upon it. Johnson v. Cox, supra; Hillis v. Home Owners' Loan Corp., 348 Mo. 601, 154 S.W.2d 761.

■ The plaintiff rests her contention upon the theory that defendant could have seen her on the north curb as he was crossing the intersection and after a northbound car had passed in front of him. Our attention is directed to the testimony of the two witnesses who were in the westbound car, both of whom stated that there was nothing to obstruct the vision of the defendant after he came through the northbound traffic, and to the defendant's own statement that there was nothing to block his view of the north curb after the last northbound car passed in front of him. All that these facts reveal is that he could have seen the child standing on the curb where she certainly was in no position of peril at the time he was about to clear the intersection. It must be remembered that the front of defendant's car had passed 8 feet beyond the crosswalk when the occurrence took place, and it is not shown by any evidence that he could have discovered her in any peril prior to the time that she appeared near the center line of the street headed for the path of his car. It follows that there was a submissible sole cause defense.

■ The last complaint against the instruction is that it was misleading and self-contradictory. This is directed to that portion which required a finding that the "plaintiff failed to look to her right and in so failing she was negligent," etc. It is contended that this improperly injected contributory negligence into the issues for the jury's determination. It does not appear, however, that the instruction was susceptible to this complaint. It required an additional finding "that such failure, if any, to look to her right before plaintiff suddenly and unexpectedly ran into the path of defendant's automobile, if you so find, was the sole cause of the collision;" The facts hypothesized for the jury are all conjunctively joined and we have frequently held that in such case the jury must find all the facts hypothesized to be true. If she negligently ran into the path of defendant's car and this was the sole cause, and the jury was required to find this, she could not be prejudiced by a finding that her course of conduct immediately prior to this was also negligent. The evidence presented a very simple state of facts which were fully covered by other instructions, and it does not appear that the jury could have been misled or confused by Instruction No. 5.

For the reasons stated, it is the recommendation of the Commissioner that the judgment be affirmed.

PER CURIAM.

The foregoing opinion of WOLFE, C., is adopted as the opinion of the court.

The judgment of the circuit court is accordingly affirmed.

RUDDY, Acting P. J., and ROBERT L. ARONSON and SAM C. BLAIR, Special Judges, concur.