Olta PARMLEY, Guardian of Zollie Crawford Parmley, Appellant,

v.

William B. HENKS, Respondent.

No. 44182.

Supreme Court of Missouri.

Division No. 2.

Jan. 9, 1956.

Ben W. Swofford, Robert A. Schroeder, John C. Milholland, Kansas City, Edward W. Speiser, Salisbury, Gayles Pine, Warrensburg (Swofford, Schroeder & Shankland, Kansas City, of counsel), for appellant, Olta Parmley, Guardian of Zollie Crawford Parmley.

Dudley D. Thomas, Carrollton, James J. Wheeler, Keytesville, James C. Morris, Kansas City, Harry L. Thomas, Kansas City, for respondent.

BARRETT, Commissioner.

Zollie Parmley operated a poultry business in Warrensburg and lived on High-

way 13, a mile or two south of the city. Highway 13 is a concrete, two-lane highway and Zollie's residence and the driveway entrance to it are on the east side of the highway. On January 18, 1953 Zollie rode home in his employee's, Wilfred Prince's, automobile. When they arrived opposite the entrance it was about 6 o'clock and dark. Wilfred stopped his automobile on the highway shoulder on the west side, with the motor running and the headlights on his automobile lighted. Zollie alighted from the right-hand side, walked to the rear of the automobile, and started across the highway towards the driveway. As Wilfred started his car forward and again drove onto the pavement a Buick automobile traveling north in the east traffic lane hit Zollie and knocked him off the pavement. Mr. William B. Henks was the driver of the Buick automobile and as he approached the Parmley residence was traveling at a speed of fifty to sixty miles an hour. Mr. Prince said that as he drove onto the pavement and had proceeded about two hundred feet from the point he had stopped he met and passed the Buick and Zollie was then about on the center line of the pavement. According to the plaintiff's evidence, one more step and Zollie would have crossed the pavement in safety. He was struck by the right front fender and headlight of the Buick automobile.

To recover $100,000 damages for his resulting injuries, Zollie instituted this action against Mr. Henks. After Zollie had been declared incompetent to manage his affairs his guardian, who was also his wife Olta, was substituted in her capacity as guardian as plaintiff in the action. Mr. Henks' liability was submitted upon the hypothesis of the humanitarian doctrine, that Zollie was in a position of imminent peril, that Mr. Henks saw or should have seen him and thereafter have slackened the speed of his automobile or swerved it and thereby have avoided hitting Zollie. Upon the submission of the case ten members of the jury returned a verdict in favor of the defendant Henks and the plaintiff has appealed, urging that the trial court so prejudicially erred in the admission of evi-

dence, or more precisely permitting certain cross-examination by defense counsel and limiting the cross-examination by plaintiff's counsel, in permitting improper argument, and in instructing the jury that this court should grant a new trial.

 The first of these claims of prejudicial error arose in connection with the cross-examination of a witness, an expert, called by the plaintiff. After qualifying and after stating that he had actually experimented with a 1951 Buick automobile on Highway 13, this witness testified in detail to the distances in which the automobile could have been stopped, the speeds to which it could have been reduced, and to the distances it could have been swerved. It is now urged that the court, upon cross-examination, improperly permitted defense counsel to ask questions which did not call for "expert opinion," but were questions properly for the jury to decide. The precise objection is that counsel did not ask "hypothetical questions" but used the names of the parties and the actual facts as testified to by other witnesses, for example: "Assuming that Mr. Henks was traveling a speed of fifty-five miles an hour when he first saw Mr. Parmley, assuming further that there were skid marks to the south of Mr. Parmley for forty steps in the lane, how much time elapsed between the time that Mr. Henks first saw Mr. Parmley and the time of impact?" The objections were that three of the questions called for "an improper conclusion," one that it was "immaterial" and another that the question was "argumentative." There were no other requests for further action on the part of the court and there were many questions to which there were no objections. In the cross-examination of this particular witness we can see no impropriety in the type of questions quoted—merely because they employed the names of parties and facts testified to by other witnesses; defense counsel was not obliged to ask questions calling for "opinion" answers only. There was no question as to the qualifications of this witness to answer the questions or to express an opinion, Hamre v. Conger, 357 Mo. 497, 209

S.W.2d 242, and the extent of the cross-examination was well within the court's unabused discretion. Eickmann v. St. Louis Public Service Co., 363 Mo. 651, 253 S.W.2d 122. The questions called for answers, opinions or conclusions of fact and the questions and the court's rulings were not so prejudicial as to demand the granting of a new trial. Cole v. Uhlmann Grain Co., 340 Mo. 277, 297, 100 S.W.2d 311, 321–322; Williamson v. St. Louis Public Service Co., 363 Mo. 508, 252 S.W.2d 295, 299–300.

Also in connection with the introduction of evidence it is urged that the court prejudicially erred in permitting defense counsel to elicit from Mr. Henks the fact that the highway patrolmen, who investigated the circumstances of his hitting Zollie, did not arrest him or file charges against him. It is also contended that thereafter the court unfairly refused permission to plaintiff's counsel to show that Mr. Henks was then represented by the prosecuting attorney of Johnson County. The appellant concedes that there was only the general objection, "Object to that," when Mr. Henks testified, but it is urged that the admission of the evidence was such plain error affecting substantial rights that this court should nevertheless consider the objection under 42 V.A.M.S. Rule 3.27. But the objection was general and the testimony was not so patently inflammatory as to have deprived the plaintiff of a fair trial. Hoffman v. St. Louis Public Service Co., Mo., 255 S.W.2d 736, 742; Clark v. McKeone, Mo., 234 S.W.2d 574, 577. And again, it may not be said that the trial court abused its discretion in declining to permit plaintiff's counsel, upon cross-examination of Mr. Henks, to go into the immaterial, if not collateral, subject of the prosecuting attorney's being his counsel.

Instruction number 4 permitted a verdict for the defendant upon the finding and hypothesis that Zollie, at the time Mr. Henks "was approaching on the highway from the south, was in a place on said highway where he was not in a position of danger from being struck by defendant's automobile, and that he thereafter suddenly stepped from a position of safety and onto a portion of the highway close in front of said automobile," that in so doing he was negligent and that such negligence was the sole cause of the collision and that Mr. Henks "was not negligent in any particular as defined in other instructions herein * * *." It is urged that there is no evidence in the record tending to prove a sole cause situation, that the instruction fails to hypothesize facts in evidence which would exonerate the defendant, and that it permitted the jury to consider antecedent negligence on Zollie's part, and for all these reasons that the instruction was so prejudicially erroneous as to compel the granting of a new trial.

To demonstrate that there was no factual basis for the instruction the plaintiff quotes from parts of Mr. Henks' cross-examination, particularly with reference to a prior deposition, and says that his testimony was "completely negative" as to how close he was to Mr. Parmley when he first saw him, as to how far his car skidded, and as to how far he was from the Parmley driveway when he passed Prince, and urges, in effect, that the evidence was not of such probative force that a sole cause situation could be either hypothesized or found. But Mr. Henks testified that as he traveled north at a speed of fifty to sixty miles an hour he met and passed an automobile (the only one there, Prince's), and he said that the headlights of the approaching automobile blinded him and he could not see down the highway until he had passed the lights. He said, "Just immediately after I passed it I noticed this object in front of me. * * * On the left side of the highway, on the left side of the line a little bit." The object appeared to be a man and he immediately applied his brakes. At that time, he said, the man "was motionless" and was not in any part of the traffic lane in which he was driving. Then, "This man, just as I got up a little closer it appeared he thought he could cross. * * * He apparently started to move. * * * Across the highway in front of me." Upon cross-examination

he again said that when he first saw Mr. Parmley, "He wasn't moving that I could see." He was then within a few inches of the black center line and "Just the instance I passed the car the man was in front of me, I could see the object of him when I applied my brakes. * * * I didn't know what he was going to do, a man on the center line." He said, "I didn't swerve it, I didn't have time to."

The defendant was not conclusively bound by his deposition, Hamilton v. Patton Creamery Co., 359 Mo. 526, 533–534, 222 S.W.2d 713, 715–716, but the deposition, the cross-examination and certainly Mr. Henks' direct testimony established a factual basis for a sole cause hypothesis. Bunch v. Mueller, Mo.App., 278 S.W.2d 25; Doherty v. St. Louis Butter Co., 339 Mo. 996, 98 S.W.2d 742; Steffen v. Ritter, Mo., 214 S.W.2d 28. In this connection, even in this cause submitted upon the hypothesis of the humanitarian doctrine, the issues in this case were very simple and there was but slight possibility of confusion or lack of understanding upon the part of the jury. The limited, crucial fact issue was whether Mr. Parmley suddenly walked from a standing position near the center line of the highway into the path of Mr. Henks' car or whether he lacked but a step of crossing the concrete highway in safety and there was but little dispute or contradiction concerning any other fact issue in the case. Before hypothesizing Mr. Parmley's discoverable imminent peril and Mr. Henks' ability thereafter to have swerved or sufficiently slackened the speed of his automobile the principal instruction set forth these facts: "* * * if you find and believe from the evidence that on January 18, 1952, that the defendant, William Henks, was operating his 1950 Buick Sedan automobile in a northerly direction along and upon Missouri State Highway #13 at a point approximately 6/10ths of one mile South of the town of Warrensburg in Johnson County * * * and * * * that on said date the plaintiff's ward, Zollie Parmley, was walking from the West to the East side of the paved portion of said Highway # 13 toward the private driveway leading into his home as mentioned and described in evidence and if you further find and believe from the evidence that the said Buick automobile operated by the defendant struck said Zollie Parmley at said time and place, if so, and * * * that at the time and place mentioned in evidence said Zollie Parmley was in a position of imminent peril of being struck and injured by said Buick automobile * * *." There was really no disagreement between the parties as to most of these facts and as to the really decisive fact question the sole cause instruction conversely employs almost the identical language and hypothesis of the principal instruction. Instruction four could well have detailed other and further facts precisely as in Kimbrough v. Chervitz, 353 Mo. 1154, 186 S.W.2d 461, but it was in effect and substance the converse of the essentials of the humanitarian hypothesis and did not hypothesize or authorize the jury's consideration of antecedent contributory negligence which was specifically excluded in the conclusion of the principal instruction. If the jury should find and accept the hypothesis of this instruction there could be no recovery under the humanitarian doctrine as hypothesized and set forth in the principal instruction. It is in this respect that the case and the instruction are distinguishable from the more complicated situations in Janssens v. Thompson, 360 Mo. 351, 228 S.W.2d 743; Johnson v. Cox, Mo., 262 S.W.2d 13, and Shields v. Keller, 348 Mo. 326, 153 S.W.2d 60, in which the facts and circumstances set forth in the sole cause instructions did not make the humanitarian doctrine inapplicable. While the instruction might have been more detailed or precise, its language and hypothesis is well within Borgstede v. Waldbauer, 337 Mo. 1205, 88 S.W.2d 373; Steffen v. Ritter, supra; Doherty v. St. Louis Butter Co., supra, and Bunch v. Mueller, supra, and in the particular circumstances is not so confusing, misleading or prejudicially erroneous as to compel the granting of a new trial.

■ Instruction five is a precise converse instruction and there is no objection

to its substance; the objections are that it was so worded as to permit the jury to believe that it was not receiving the instructions from the court, that it improperly described the capacity of the plaintiff, and that it contained abstract statements of law and was argumentative and confusing, especially in its attempt "to define judicial decisional law." As to the latter objection, there is no attempt to specifically point out wherein the instruction defines "the effect of judicial decisions" and demonstrate in what manner it was confusing; it is merely asserted that, "The attempt in Instruction No. 5 to define the judicial concept of our Humanitarian Doctrine could only succeed in confusing a lay jury as was aptly demonstrated by the verdict * * *." But, of course, the verdict does not demonstrate that the instruction was confusing or misleading and as indicated, there is no claim that it was not a correct statement of law or that it had no application to the case. It may be merely because certain language is found in the text of an appellate court opinion that it is not necessarily a proper matter to be incorporated in an instruction, In re Harlow's Estate, 239 Mo.App. 607, 623, 192 S.W.2d 5, 13, but there is no demonstration here that it was so prejudicially erroneous in the respect urged as to compel the granting of a new trial. 88 C.J.S., Trial, § 337, p. 881.

■ And so it is with the claim of abstractness and lack of factual hypothesis, it is, conversely, in almost the precise language of the instruction submitting the defendant's liability, Kimbrough v. Chervitz, supra, and may not be said to set forth in a prejudicial manner the reasons for the rules of law as in Greenwood v. Bridgeways, Inc., Mo.App., 243 S.W.2d 111. The instruction informed the jury that "the *plaintiff* seeks to recover damages," that "the *plaintiff* further says that this is true, even though he, the *plaintiff* * * *." By reason of the italicized words it is contended that the jury could believe that "it was not receiving the instruction from the court" and, furthermore, that it did not correctly describe the capacity of the plaintiff.

Instruction three referred to Mr. Parmley as "the plaintiff's ward," the instruction as to the measure of damages said such damages as will "fairly and reasonably compensate for the injuries, if any, Zollie Parmley sustained," and it is said that instruction five "makes no such distinction" and "would seem to place the Guardian in the position of the injured person." In its essentials the argument is that the jury would not understand that the suit was being maintained by Mrs. Parmley "in a fiduciary capacity as Guardian of the injured person * * *." However, there was no notation or caption designating the instruction as "plaintiff's instruction", Ellyson v. Missouri Power & Light Co., Mo.App., 59 S.W.2d 714, and there is no demonstration that it was so misleading or confusing in the designation or description of the parties, or in any of the respects claimed, as to be prejudicially erroneous in a material matter affecting substantial rights. Trustees of Christian University v. Hoffman, 95 Mo.App. 488, 69 S.W. 474; Schipper v. Brashear Truck Co., Mo., 132 S.W.2d 993, 125 A.L.R. 674.

■ Despite their failure to object during the trial of the case, Enyart v. Santa Fe Trail Transportation Co., Mo., 241 S.W.2d 268, it is now urged that the court prejudicially erred in permitting defense counsel to make the plea that the defendant was a working man with a wife and family and that "they want you to inflict financial ruin upon Mr. Henks." The argument was improper, but plaintiff's counsel were not intimidated by it for in their turn they retaliated in kind: "Now, I just want to say this man here is a working man, you bring in a verdict for a $100,-000.00, I will show you how to collect it." They also argued Mrs. Parmley's financial condition, "she knows she's got to stay by him whether she has a living or not." The argument was "a stalemate," and defense counsel's argument was not so patently inflammatory and unfairly prejudicial in the circumstances as to invoke Rule 3.27 or to demand the granting of a new trial. Hoffman v. St. Louis Public Service Co., Mo., 255 S.W.2d 736, 743; Hilton v.

Thompson, 360 Mo. 177, 227 S.W.2d 675; Griffith v. Gardner, 358 Mo. 859, 217 S.W.2d 519.

There being no such prejudicial error in any of the respects urged as to demand the granting of a new trial the judgment is affirmed.

BOHLING and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by BARRETT, C., is adopted as the opinion of the Court.

All concur.