SIMMONS LUMBER CO. ET AL *v.*
ANTHONY ZEILER, GUARDIAN ET AL

5-5485                                    463 S. W. 2d 659

Opinion delivered March 1, 1971

*Daily, West, Core & Coffman,* for appellants.

*Wright, Lindsey & Jennings,* for appellees

GEORGE ROSE SMITH, Justice. This is a death claim filed under the workmen's compensation law by the widow and minor children of Opal Lee Zeiler, who was accidentally killed in the course of his employment on March 27, 1967. At the time of his death Zeiler was a sawyer cutting timber for his employer, Wendell Nelms, who in turn was a logger working under a contract with the appellant Simmons Lumber Company. The principal question for the commission was whether the primary liability for the Zeiler death claim rested upon Simmons and its insurance carrier or upon Nelms and his insurance carrier. The commission put the responsibility upon Simmons and its insurer, upon a finding of fact that Simmons had orally agreed to provide workmen's compensation insurance coverage for Nelms and his employees. This appeal is from a circuit court judgment sustaining the commission's decision. We hold that the judgment should be affirmed.

Nelms testified that for some time prior to March, 1967, he had been cutting and hauling timber for Nebo Lumber Company at a contract price of $29 per thousand feet. Nelms was then carrying workmen's compensation insurance upon his own employees, with Reliance Insurance Company. About two weeks before Zeiler's death Nelms, with his men, began working for Simmons. Nelms testified that he and Mr. Simmons agreed upon a contract price of only $28 a thousand, instead

of $29, because Simmons was to carry the compensation insurance. This is Nelms's testimony upon that point:

> [Simmons] said, well, you ought to be able to knock off a dollar per thousand feet and us carry the insurance on it. I said, yeah, that sounds about right. It'd take that to pay the insurance. He said, well, now in the meanwhile we request you to carry liability on your truck, and we'll carry workmen's compensation on your crew, and that's all there was to it.

The appellants argue that the Simmons-Nelms agreement for compensation insurance coverage was not valid, principally because Simmons would not have agreed to provide the coverage if he had known that Nelms himself had a policy that was not to expire until about two months later. There was, however, certainly no fraud or concealment. According to the undisputed testimony, the two men simply made no reference whatever during their discussion to the possibility that Nelms might have a policy of his own.

Thus there is ample proof to support the commission's finding that Simmons agreed to provide compensation insurance for Nelms and his crew. In fact, there is no evidence to the contrary. The validity of such an agreement is thoroughly established by our decisions. *Hale* v. *Mansfield Lbr. Co.*, 237 Ark. 854, 376 S. W. 2d 670 (1964); *Hughes* v. *Hooker Bros.*, 237 Ark. 544, 374 S. W. 2d 355 (1964); *Stillman* v. *Jim Walter Corp.*, 236 Ark. 808, 368 S. W. 2d 270 (1963). It may be true, as the appellants argue, that the Simmons compensation policy would not have prevented Zeiler's dependents from bringing a wrongful death action against Simmons, as the prime contractor, had such a cause of action existed. Even so, that possibility does not entitle Simmons to repudiate its contract. Any such election would lie with the claimants, not with the primary contractor or its insurer.

The appellants also contend that the full commis-

sion should have allowed them to introduce a deposition of Howard Simmons that was not taken until almost six months after the referee had handed down his decision in favor of the claimants. The commission held that, under its own procedural rules, the deposition was taken and tendered too late; for the referee would have received the deposition if it had been offered earlier. We find no abuse of discretion in that ruling. Moreover, in the deposition Mr. Simmons admitted with candor that if Nelms had testified "that he'd talked to you wanting $29 and that you offered him $28 and agreed to carry insurance," that testimony would "likely be correct." Thus no prejudice is shown, for Simmons corroborated Nelms upon the pivotal point of fact in the case.

Affirmed.

JONES, J., dissents.

J. FRED JONES, Justice, dissenting. I do not agree with the majority opinion in this case.

Ark. Stat. Ann. § 81-1305 (Repl. 1960) provides, in part, as follows:

"Every employer shall secure compensation to his employees and pay or provide compensation for their disability or death from injury arising out of and in the course of employment, without regard to fault as a cause for such injury; * * * The primary obligation to pay compensation is upon the employer and the procurement of a policy or insurance by an employer to cover the obligation in respect to this act shall not relieve him of such obligation."

Apparently Nelms was legally obligated to secure compensation for his employees under § 81-1305 and there is no question that he did so. There is no question that Nelms was a subcontractor, and there is no question that the decedent, Zeiler, was an employee of Nelms

at the time of Zeiler's accidental death within the course of his employment by Nelms.

The compensation law is not concerned with the enforcement of verbal agreements between the prime and independent subcontractors. The compensation law is concerned with providing compensation benefits for injured employees coming under the act, and is not concerned with relieving prime contractors of common law tort liability by such subtle device as a verbal agreement between prime and subcontractors.

Section 81-1305, supra, prescribes the obligation of Nelms to his employee, Zeiler, in this case, and Nelms fulfilled his obligation under this statute.

Section 81-1306 prescribes Simmons' liability in the event that Nelms had not secured the compensation for which he was liable under § 81-1305. Section 81-1306 pertaining to subcontractors is as follows:

> "Where a subcontractor fails to secure compensation required by this act [§§ 81-1301—81-1349], the prime contractor shall be liable for compensation to the employees of the subcontractor. Any contractor or his insurance carrier who shall become liable for the payment of compensation on account of injury to or death of an employee of his subcontractor may recover from the subcontractor the amount of such compensation paid or for which liability is incurred. The claim for such recovery shall constitute a lien against any moneys due or to become due to the subcontractor from such prime contractor. A claim for recovery, however, shall not affect the right of the injured employee or the dependents of the deceased employee to recover compensation due from the prime contractor or his insurance carrier."

Now under the facts in the case at bar, Nelms had fully secured compensation to his employees, including Zeiler, and this security (workmen's compensation in-

surance policy) was in full effect at the time of Zeiler's death while in the employment of Nelms in the execution of Nelms' subcontract for the prime contractor, Simmons. Simmons had simply made a verbal agreement with Nelms to secure compensation covering Nelms' employees, including Zeiler, and Nelms testified that he entered into this agreement in order to secure compensation to himself as well as to his employees.

I agree that the majority opinion apparently does no violence to death claims arising in favor of dependent claimants in this particular case, but it is my view that the majority opinion does do violence to the compensation law as it is now written and as we have heretofore interpreted it.

I can readily visualize a situation where Zeiler might have been injured or lost his life because of the common law negligence of the prime contractor. In such event he, or his dependents, would have been entitled to workmen's compensation benefits from Nelms (who had secured compensation under the act) without losing or affecting any third party tort action claim for negligence he, or his dependents, might have had against the prime contractor, Simmons. *Baldwin & Co.* v. *Maner,* 224 Ark. 348, 273 S. W. 2d 28.

The effect of the majority opinion, as I view it, is to permit a subcontractor who has secured compensation for his employees, to barter away, through verbal agreement, his employees' right of recovery in negligence tort actions against a prime contractor, in exchange for individual compensation security to the subcontractor.

I cannot accept as an intent of the law that such substantial rights of an employee are to be weighed on such delicate scales as verbal executory agreements between an employer subcontractor and a third party prime contractor.

I would reverse.